GEER, Judge.
 

 *503
 
 Defendant Roger Christopher Oxendine appeals from his convictions of manufacturing methamphetamine and possessing precursors to methamphetamine. On appeal, defendant contends that the indictment's language was insufficient because (1) with respect to the possession of methamphetamine precursors count, it failed to allege defendant's intent to use the precursors to manufacture or his knowledge that they would be used to manufacture methamphetamine; and (2) with respect to the manufacturing methamphetamine count, the indictment relied on defendant's possessing precursors as the basis for the manufacturing charge. We hold, as to the possession count, that the indictment was insufficient and therefore arrest judgment on that count for possessing a precursor chemical to methamphetamine. As to the count for manufacturing methamphetamine, however, we hold that the indictment was sufficient.
 

 Facts
 

 The State's evidence tended to show the following facts. On 15 March 2011, Lieutenant Mendel Miles of the Union County Sheriff's Office received information causing him to go to a residence in Stallings, North Carolina, along with Detectives James Godwin and Mark Thomas, both of the Union County Sheriff's Office. When Lieutenant Miles and the other officers arrived, they observed a detached garage about 75 feet from the main residence. The officers approached the building using the public driveway and heard two different male voices inside of the building. They also smelled a strong odor of ammonia.
 

 Lieutenant Miles stepped around to an open door where he initially saw Tony Sowards standing behind a drill press. To the right side of the open door, he saw defendant, who appeared to be condensing ammonia. After Lieutenant Miles announced his presence and identified himself, defendant attempted to hide. Lieutenant Miles ordered both individuals
 
 *504
 
 to exit the building, but defendant had to be told twice before he complied. Defendant and Mr. Sowards were then placed in handcuffs.
 

 After securing the location, Lieutenant Miles put on protective gear and entered the garage to perform a safety assessment. In the garage, the investigating team found materials used to manufacture methamphetamine, including, among other things: Coleman fuel, an ammonia condenser, cold packs, lye, Roebic Crystal Drain Cleaner, Liquid Fire, tubing, lithium batteries, pseudoephedrine tablets, and muriatic acid. The team also found a liquid solution in containers in the garage that was analyzed and samples of the solution revealed the presence of methamphetamine, as well as chemicals consistent with a clandestine manufacture of methamphetamine.
 

 On 3 October 2011, defendant was indicted, in a superseding indictment, for manufacturing methamphetamine and for possessing a precursor chemical to methamphetamine. Defendant was found guilty of both charges, and the trial court sentenced defendant to a term of 86 to 113 months for manufacturing methamphetamine and a concurrent term of 17 to 21 months for possession of a precursor to methamphetamine. Defendant timely appealed to this Court.
 

 I
 

 Defendant first argues that the indictment for possession of methamphetamine precursors was insufficient because it failed
 
 *289
 
 to allege either defendant's intent to use the precursors to manufacture methamphetamine or his knowledge that they would be used to manufacture methamphetamine. We agree.
 

 Although defendant did not object at trial to the facial inadequacy of the precursor indictment, "[a] challenge to the facial validity of an indictment may be brought at any time, and need not be raised at trial for preservation on appeal."
 
 State v. LePage,
 

 204 N.C.App. 37
 
 , 49,
 
 693 S.E.2d 157
 
 , 165 (2010). "[W]e review the sufficiency of an indictment
 
 de novo.
 
 "
 
 State v. McKoy,
 

 196 N.C.App. 650
 
 , 652,
 
 675 S.E.2d 406
 
 , 409 (2009).
 

 To be valid, " 'an indictment must allege every essential element of the criminal offense it purports to charge.' "
 
 State v. Billinger,
 

 213 N.C.App. 249
 
 , 255,
 
 714 S.E.2d 201
 
 , 206 (2011) (quoting
 
 State v. Courtney,
 

 248 N.C. 447
 
 , 451,
 
 103 S.E.2d 861
 
 , 864 (1958) ). However, " '[o]ur courts have recognized that[,] while an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form.' "
 
 State v. Harris,
 

 219 N.C.App. 590
 
 , 592,
 
 724 S.E.2d 633
 
 , 636 (2012) (quoting
 
 *505
 

 In re S.R.S.,
 

 180 N.C.App. 151
 
 , 153,
 
 636 S.E.2d 277
 
 , 280 (2006) ). " 'The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words.' "
 
 State v. Simpson,
 

 235 N.C.App. 398
 
 , 400-01,
 
 763 S.E.2d 1
 
 , 3 (2014) (quoting
 
 State v. Greer,
 

 238 N.C. 325
 
 , 328,
 
 77 S.E.2d 917
 
 , 920 (1953) ).
 

 Here, defendant was charged with violating N.C. Gen.Stat. § 90-95(d1)(2) (2013),
 
 [1]
 
 which makes it unlawful for any person to "[p]ossess an immediate precursor chemical with intent to manufacture methamphetamine" or to "[p]ossess or distribute an immediate precursor chemical knowing, or having reasonable cause to believe, that the immediate precursor chemical will be used to manufacture methamphetamine." The indictment in this case alleged that defendant "unlawfully, willfully and feloniously did possess lithium batteries, ammonia nitrate, malonic acid, pseudoephedrine blister packs, coleman fuel, roebic drain cleaner, liquid fire, cold pack, household lye and tubing used in the manufacture of methamphetamine."
 

 Defendant contends that this indictment failed to allege, as required by N.C. Gen.Stat. § 90-95(d1)(2), that he had the required specific intent: that he either possessed the precursor with intent himself to manufacture methamphetamine or he possessed the precursor knowing or having reasonable cause to believe that it would be used by someone else to manufacture methamphetamine. In support of his argument that the indictment was insufficient because of this omission, defendant relies on
 
 State v. Miller,
 

 231 N.C. 419
 
 , 420,
 
 57 S.E.2d 392
 
 , 394 (1950), in which our Supreme Court held "[w]hen a specific intent is a constituent element of the crime, it must be alleged in the indictment. The omission of such allegation is fatal."
 

 We agree with defendant that the indictment is insufficient to allege the necessary specific intent or knowledge. While the indictment alleges that the identified materials possessed by defendant are used in the manufacture of methamphetamine, the indictment fails to allege that defendant, when he possessed those materials, intended to use them, knew they would be used, or had reasonable cause to believe they would be used to manufacture methamphetamine. The indictment contains
 
 *506
 
 nothing about defendant's intent or knowledge about how the materials would be used.
 

 The State, in arguing that the indictment is adequate, relies upon
 
 Harris.
 
 In
 
 Harris,
 
 however, this Court was not required to address the question presented by this case: whether an element of the crime relating to defendant's specific intent or knowledge or
 
 *290
 
 belief of someone else's intent was omitted. Instead, the statute at issue in
 
 Harris
 
 required the State to prove generally that a defendant was "knowingly" on school premises.
 
 Id.
 
 at 596,
 
 724 S.E.2d at 637
 
 . The Court observed that the term "willfully" implies that an act was done "knowingly."
 
 Id.
 
 at 595,
 
 724 S.E.2d at 637
 
 . Consequently, the Court concluded, the indictment's allegation that defendant was "willfully" on school premises "sufficed to allege the requisite 'knowing' conduct."
 
 Id.
 
 at 596,
 
 724 S.E.2d at 638
 
 .
 

 In this case, however, simple "knowing" possession of the materials specified in the indictment does not violate the law. Therefore, the fact that this Court has equated an allegation of willfulness with knowledge does not lead to the conclusion that the indictment is valid. The allegation that defendant "willfully" possessed the materials does not allege that he did so for any particular purpose or with knowledge or reasonable cause to believe that the materials would be used for any particular purpose. Therefore,
 
 Harris
 
 is inapplicable.
 

 The dissent also relies upon this Court's unpublished opinion in
 
 State v. Ricks,
 

 232 N.C.App. 186
 
 ,
 
 754 S.E.2d 259
 
 ,
 
 disc. review denied,
 

 367 N.C. 785
 
 ,
 
 766 S.E.2d 645
 
 (2014), in which the Court addressed the sufficiency of an indictment charging the defendant with possession of a stolen firearm, an offense requiring that the defendant know that the firearm was stolen. This Court held: "[T]he indictment alleged that defendant 'unlawfully, willfully, and feloniously' possessed the stolen rifle. This allegation of willfulness was sufficient under ...
 
 Harris
 
 to allege the knowledge element of the offense of possession of a stolen firearm." In other words, since the offense required mere knowledge that the firearm was stolen, an allegation that the defendant " 'willfully' " possessed the stolen gun was sufficient.
 

 For this case to be analogous to
 
 Ricks,
 
 the criminal offense would have to make possession of the products specified in the indictment unlawful if the defendant knew that they could be used in the manufacture of methamphetamine. However, that knowledge is not what makes possession of precursor chemicals illegal. Even though much of the public knows that pseudoephedrine is used in the manufacture of methamphetamine, that knowledge does not make it unlawful to go to
 
 *507
 
 the drugstore and buy the product when a person has a cold. The statute makes it unlawful to possess the precursors if the individual intends to use them in the manufacture of methamphetamine or knows or has cause to believe that someone else will do so. The issue is the defendant's knowledge of how the precursors will be used. Just as an indictment for possession of cocaine with intent to sell or deliver must allege the specific intent regarding why the defendant possesses the cocaine, so too the indictment in this case must have alleged why defendant possessed the precursors: for manufacture of methamphetamine by himself or someone else.
 

 Without an allegation that defendant possessed the required intent, knowledge, or cause to believe, the indictment fails to allege an essential element of the crime. Accordingly, we must arrest judgment on defendant's conviction of possession of a precursor chemical in violation of N.C. Gen.Stat. § 90-95(d1)(2)(b).
 

 II
 

 Next, defendant argues that the indictment was insufficient to allege the offense of manufacturing methamphetamine. The indictment alleged that defendant:
 

 unlawfully, willfully and feloniously did knowingly manufacture methamphetamine, a controlled substance listed in Schedule II of the North Carolina Controlled Substances Act. The manufacturing consisted of possessing lithium batteries, ammonia nitrate, malonic acid, pseudoephedrine blister packs, coleman fuel, roebic drain cleaner, liquid fire, cold pack, household lye and tubing in a garage at 4701 Stevens Mill Road, Stallings, North Carolina.
 

 Defendant contends that possession of materials that can be used to manufacture methamphetamine is not the same as manufacturing the substance itself. Further, defendant argues that this count of the indictment
 
 *291
 
 essentially just alleges another count of possession of precursor chemicals.
 

 Under N.C. Gen.Stat. § 90-95(a)(1) (2015), "it is unlawful for any person [t]o manufacture ... a controlled substance[.]" The first sentence of the indictment precisely tracks the language of the statute. An indictment is only required to allege the essential elements of the crime sought to be charged.
 
 Billinger,
 

 213 N.C.App. at 255
 
 ,
 
 714 S.E.2d at 206
 
 . " 'Allegations beyond the essential elements of the crime sought to be charged are irrelevant and may be treated as surplusage.' "
 
 State
 

 *508
 

 v. White,
 

 202 N.C.App. 524
 
 , 529,
 
 689 S.E.2d 595
 
 , 598 (2010) (quoting
 
 State v. Bollinger,
 

 192 N.C.App. 241
 
 , 246,
 
 665 S.E.2d 136
 
 , 139 (2008),
 
 aff'd per curiam,
 

 363 N.C. 251
 
 ,
 
 675 S.E.2d 333
 
 (2009) ). Consequently, "[t]he use of superfluous words should be disregarded."
 
 State v. Taylor,
 

 280 N.C. 273
 
 , 276,
 
 185 S.E.2d 677
 
 , 680 (1972).
 

 The essential elements of the offense of manufacturing methamphetamine do not include
 
 what form
 
 the manufacturing took, but rather simply that the defendant (1) manufactured (2) a controlled substance. N.C. Gen.Stat. § 90-95(a)(1). Indeed, in
 
 State v. Miranda,
 

 235 N.C.App. 601
 
 , 606-07,
 
 762 S.E.2d 349
 
 , 353-54 (2014), this Court specifically rejected any contention that the State is required to allege in the indictment the type of manufacturing activity in which the defendant engaged:
 

 Although Defendant contends in his brief that the indictment purporting to charge him with trafficking in cocaine by manufacturing was fatally defective based upon the fact that it failed to specify the exact manner in which he allegedly manufactured cocaine or a cocaine-related mixture, Defendant has failed to cite any authority establishing the existence of such a requirement, and we have not identified any such authority in the course of our own research. On the contrary, the relevant count of the indictment that had been returned against Defendant in this case is clearly couched in the statutory language and alleges that Defendant's conduct encompassed each of the elements of the offense in question. Although Defendant is correct in noting that the indictment does not explicitly delineate the manner in which he manufactured cocaine or a cocaine-related mixture, the relevant statutory language creates a single offense consisting of the manufacturing of a controlled substance rather than multiple offenses depending on the exact manufacturing activity in which Defendant allegedly engaged.
 

 Id.
 
 at 606-07,
 
 762 S.E.2d at 353-54
 
 .
 

 Because the State was not required to allege the specific form that the manufacturing activity took, the allegations in the indictment regarding possession of precursor chemicals is mere surplusage and may be disregarded. The indictment, therefore, properly alleges a violation of N.C. Gen.Stat. § 90-95(a)(1).
 

 Defendant, however, further argues that our courts have held indictments "void for uncertainty" when more than one offense is charged
 
 *509
 
 within a single count. Defendant points to
 
 State v. Williams,
 

 210 N.C. 159
 
 , 160,
 
 185 S.E. 661
 
 , 662 (1936), in which the Supreme Court held that the fact the State charged several separate offenses in one count rendered the indictment void for uncertainty. In
 
 Williams,
 
 the bill of indictment charged that the defendant " 'unlawfully, willfully, and feloniously did possess, manufacture, have under his control, sell, prescribe, administer,
 
 or
 
 dispense a narcotic drug, to-wit: Cannibis[.]' "
 
 Id.
 
 at 159-60,
 
 185 S.E. at 661
 
 .
 

 Here, unlike the indictment in
 
 Williams,
 
 the indictment included two separate and distinct counts. Count I charged defendant with manufacturing methamphetamine in violation of N.C. Gen.Stat. § 90-95(a)(1), while Count II charged defendant with possession of a methamphetamine precursor in violation of N.C. Gen.Stat. § 90-95(d1)(2). We, therefore, hold that the indictment was not void for uncertainty.
 

 III
 

 Finally, defendant argues that the trial court erred in instructing the jury on the manufacturing methamphetamine charge. According to defendant, the court instructed the jury on a non-existent crime. Defendant
 
 *292
 
 did not, however, object at trial to the jury instructions.
 

 While, ordinarily, we could review the instructions under a plain error standard,
 
 State v. Gregory,
 

 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996), defendant has specifically asserted that "Mr. Oxendine has not requested plain error review." Defendant further notes our Supreme Court's holding that a defendant waives plain error review when he does not specifically argue plain error.
 
 See
 

 State v. Wiley,
 

 355 N.C. 592
 
 , 607,
 
 565 S.E.2d 22
 
 , 35 (2002). We, therefore, do not review the jury instructions in this case for plain error.
 

 Defendant asks instead that this Court suspend the Rules of Appellate Procedure under Rule 2 of those Rules, apply a de novo review to the question whether the trial court erred in its instructions, and then conclude that this error amounts to manifest injustice as required under Rule 2. However, the analysis under "plain error" review is not more rigorous than that required if we were to act under Rule 2.
 

 Our Supreme Court has held:
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire
 
 *510
 
 record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations and quotation marks omitted). The first step under plain error review is, therefore, to determine whether any error occurred at all. However, in the second step, the defendant must show that any error was fundamental by establishing that the error had a probable effect on the verdict.
 

 Our Supreme Court has held with respect to Rule 2 : "While an appellate court has the discretion to alter or suspend its rules, exercise of this discretion should only be undertaken with a view toward the greater object of the rules. This Court has tended to invoke Rule 2 for the prevention of manifest injustice in circumstances in which substantial rights of an appellant are affected."
 
 State v. Hart,
 

 361 N.C. 309
 
 , 316,
 
 644 S.E.2d 201
 
 , 205 (2007) (internal quotation marks omitted). In other words, rather than deciding whether an error had a probable impact on the verdict, we must determine whether suspending the Appellate Rules is necessary to prevent manifest injustice.
 

 Here, the jury was given the following instruction related to the offense of manufacturing methamphetamine:
 

 For you to find the defendant guilty of this offense, the state must prove beyond a reasonable doubt that the defendant manufactured methamphetamine. Knowingly possessing lithium batteries, ammonia nitrate, malonic acid, pseudoephedrine blister packs, Coleman fuel, Roebic drain cleaner, liquid fire, cold packs, household lye and tubing
 
 for the purpose of combining which created methamphetamine
 
 would be manufacture of a controlled substance.
 

 (Emphasis added.)
 

 The trial court further instructed the jury:
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant, acting either by himself or acting together with other persons, knowingly possessed lithium batteries, ammonia
 
 *511
 
 nitrate, malonic acid, pseudoephedrine blister packs, Coleman fuel, Roebic drain cleaner, liquid fire, cold packs, household lye and tubing
 
 for the purpose of combining which created methamphetamine,
 
 it would be your duty to return a verdict of guilty. If you do not so find or have a reasonable doubt, it would be your duty to return a verdict of not guilty.
 

 (Emphasis added.)
 

 While defendant argues that the trial court was instructing the jury that it could find manufacturing based on possession of precursor chemicals alone, we do not agree. Although the instruction could have been more precisely worded, we believe a jury
 
 *293
 
 would understand from this instruction that it was required to find not only that defendant possessed these chemicals, but also that he possessed the chemicals in order to combine them, and, upon doing so, he created methamphetamine.
 

 Even if the instruction is imprecise, defendant has not shown that a failure to suspend the Appellate Rules would result in manifest injustice. The evidence at trial established that officers caught defendant in the actual act of manufacturing methamphetamine and, following a search of the garage where defendant was found, officers discovered numerous precursor chemicals used in manufacturing methamphetamine and containers that held liquid, which tested positive for methamphetamine and chemicals consistent with the clandestine manufacture of methamphetamine. Further, defendant claimed to Detective Godwin that "it was not his cook" and that he was just "helping someone out." The evidence against defendant was overwhelming and we can see no manifest injustice warranting application of Rule 2.
 

 Conclusion
 

 We arrest judgment on Count II of the indictment, alleging a violation of N.C. Gen.Stat. § 90-95(d1)(2). We have found no error, however, with respect to Count I of the indictment, charging defendant with manufacturing a controlled substance in violation of N.C. Gen.Stat. § 90-95(a)(1).
 

 NO ERROR IN PART; JUDGMENT ARRESTED IN PART.
 

 Judges HUNTER, JR. concurs.
 

 Judge DILLON concurs in part and dissents in part in a separate opinion.
 

 DILLON, Judge, concurring in part, dissenting in part.
 

 *512
 
 I concur with Sections II and III of the majority's opinion. However, because I believe the indictment for possession of methamphetamine precursors was sufficient, I respectfully dissent from the majority's conclusion reached in Section I of its opinion.
 

 Defendant was found with precursors used in the manufacturing of methamphetamine. He was convicted under N.C. Gen.Stat. § 90-95(d1)(2), which makes it unlawful for any person to possess "an immediate precursor chemical
 
 knowing, or having reasonable cause to believe, that ... [it] will be used to manufacture methamphetamine.
 
 " N.C. Gen.Stat. § 90-95(d1)(2) (2011) (emphasis added). Defendant argues (and the majority agrees) that the indictment charging him with the crime was fatally defective because it failed to allege that Defendant possessed the precursors "
 
 knowing that they would be used in the manufacture of methamphetamine.
 
 "
 

 The indictment, here, alleged that Defendant "
 
 unlawfully, willfully, and feloniously
 
 did possess ... [precursors] used in the manufacture of methamphetamine." (Emphasis added.) The "knowing/intent" element would have been more clearly alleged had the pleader employed the phrase "knowing that said precursors would be used" rather than merely employing the word "used." However, by including the word "willfully" in the allegation, I believe that-based on our case law-the indictment is sufficient to allege that Defendant
 
 knew,
 
 not only that he possessed precursors, but also that said precursors would be "used to manufacture methamphetamine."
 

 Our Supreme Court explained in
 
 State v. Falkner,
 

 182 N.C. 793
 
 ,
 
 108 S.E. 756
 
 (1921), that the term
 
 willfully
 
 "implies that the act is done knowingly [.]"
 

 Id.
 

 at 758
 
 ,
 
 108 S.E. at 758
 
 . Our Court applied
 
 Falkner
 
 in
 
 State v. Ricks,
 

 232 N.C.App. 186
 
 ,
 
 754 S.E.2d 259
 
 ,
 
 2014 WL 217724
 
 (2014) (unpublished opinion), which involved a situation almost identical to the case at bar. In
 
 Ricks,
 
 the defendant was charged under a statute which required that the State prove that the defendant knew that the rifle was, in fact, stolen.
 

 Id.
 

 The indictment itself, however, merely alleged that the defendant "willfully" possessed a "rifle," and that the rifle "was stolen property."
 
 Id.
 
 *3. The defendant argued that the indictment was defective because it did not explicitly state that the defendant
 
 knew
 
 that the rifle he possessed was, in fact, stolen.
 
 Id.
 
 We rejected the defendant's argument, explaining:
 

 *513
 
 [O]ur courts have held that the term "willfully," in the criminal context, "implies that
 
 *294
 
 the act is done knowingly and of stubborn purpose." ... Here, the indictment alleged that defendant " unlawfully, willfully, and feloniously" possessed the stolen rifle. This allegation of willfulness was sufficient ... to allege the knowledge element of the offense of possession of a stolen firearm.
 

 Id.
 
 *3-4 (internal citations omitted). I see no meaningful difference between Ricks and the present case. That is, by alleging that Defendant "willfully" possessed precursors "used in the manufacture of methamphetamine," the pleader sufficiently alleged that Defendant knew that the precursors would be used in the manufacture of methamphetamine. This is not to say that the State is relieved from its burden of
 
 proving
 
 at trial that Defendant had the requisite knowledge, but rather that the allegations in the indictment are sufficient. Being one of the concurring judges in
 
 Ricks,
 
 I vote to find no error in the present case.
 

 [1]
 

 N.C. Gen.Stat. § 90-95(d1) was amended by 2014 N.C. Sess. Ch. 115, § 41(b) and 2015 N.C. Sess. Ch. 32, § 3. Because defendant committed the charged offenses on 15 March 2011, well before the effective dates of these respective amendments, we cite to the 2013 version of N.C. Gen.Stat. § 90-95(d1), which is the most current version of this subsection applicable to defendant.