BRYANT, Judge.
 

 *564
 
 Where defendant failed to specifically and distinctly contend on appeal that the trial court's jury instruction amounted to plain error, we consider this argument waived. Where a fatally defective indictment could not be cured by the State's material amendment prior to trial, we arrest judgment on and vacate the conviction. Lastly, where the evidence at trial demonstrated termination, not continuation, of manufacturing of methamphetamine in more than one location, two counts of manufacturing of methamphetamine do not constitute a continuing offense, and the trial court committed no error in denying defendant's motions to dismiss.
 

 In September 2013, officers at the Beaufort County Sheriff's Office received information that Randall Burmeister and an unknown female had been making numerous pseudoephedrine ("PSE") purchases at area
 
 *658
 
 pharmacies. PSE is a precursor chemical in the manufacture of methamphetamine and is also an ingredient in some over-the-counter cold and allergy drugs. Purchases of products containing PSE are tracked through the National Precursor Log Exchange ("NPLEX")
 
 *565
 
 database. In order to buy a product containing PSE, an individual must present identification at the pharmacy. The individual's ID is scanned and entered into the NPLEX database, along with the amount of PSE purchased. If the purchase exceeds a permissible threshold amount, the sale will be blocked.
 

 By analyzing NPLEX records, investigators determined that Burmeister's companion was defendant Susan Marie Maloney. Defendant and Burmeister met in Illinois in 2008, shortly after Burmeister was released from prison after serving seven years for manufacturing methamphetamine.
 

 At the request of investigators, a Walgreens pharmacist contacted police when Burmeister and Maloney purchased a PSE product on 7 October 2013. Under police surveillance, the couple left the store in a blue Taurus and drove to a residence on River Road, where officers confronted the couple in the driveway as they got out of their car.
 

 Burmeister and defendant were not the owners of the residence, but were renting a room. Burmeister gave police permission to search their room, and the house's owner, Ricky Brass, permitted police to search the entire house and the blue Taurus, which he also owned. In the back seat of the car, Lieutenant Russell Davenport found a bag containing bags of salt, which is used in the last process of cooking methamphetamine. In the trunk of the car, Lieutenant Davenport found a black garbage bag. Upon opening it, he was overcome with fumes. The police immediately secured the scene and called the State Bureau of Investigation ("SBI"). Burmeister and defendant were taken into custody.
 

 However, defendant, who had recently had heart surgery, was taken to the emergency room with chest pain. During the hours she was in the hospital, defendant told police officers that Burmeister had been arrested for making methamphetamine in Illinois. Defendant spent several hours in the hospital before being taken to the magistrate's office and served with an arrest warrant.
 

 The next day, the SBI and local officers returned to the River Road residence. Among the items found inside the garbage bag in the trunk of the car were empty cans of solvent, a container of lye, an empty cold pack, tubing, a peeled lithium battery, a coffee filter, a funnel, a glass jar, and plastic bottles containing various residues and liquids. Inside the passenger compartment, officers also seized a container of table salt, needle-nosed pliers, a can of solvent, and a package of PSE decongestant tablets. Officers also searched defendant and Burmeister's rented
 
 *566
 
 storage unit. There, they found another black garbage bag containing,
 
 inter alia
 
 , a cold pack, an empty pack of starter fluid, coffee filters, peeled lithium batteries, empty blister packs of nasal decongestant containing pseudoephedrine hydrochloride, and various bottles containing off-white crystalline material. At trial, State's witnesses testified that many of the items found in both the trunk of the Taurus and the storage unit could be used in the manufacture of methamphetamine using the "one-pot" or "shake-and-bake" method. Ultimately, three plastic bottles-two from the garbage bag found in the trunk of the car and one recovered from the garbage bag in the storage unit-were found to contain concentrations of methamphetamine.
 

 On 7 April 2014, defendant was indicted by a Beaufort County grand jury in case 13 CRS 52279 for one count of manufacturing methamphetamine and one count of possession of drug paraphernalia. Defendant was also indicted in case 13 CRS 52289 for one count of manufacturing methamphetamine, one count of possession of methamphetamine precursor materials (salt, sulfuric acid, lithium, ammonium nitrate and pseudoephedrine), and one count of possession of methamphetamine. All offenses were alleged to have occurred on or about 8 October 2013.
 

 Defendant's cases were called for jury trial on 8 February 2016 before the Honorable Marvin K. Blount III in Beaufort County
 
 *659
 
 Superior Court. The district attorney made a motion to amend the second count in the indictment in case 13 CRS 52289, the charge of possession of precursors to methamphetamine, which motion the court granted.
 

 At the close of the State's evidence, defendant made a motion to dismiss, which the court denied. Defendant presented evidence, testifying in her own defense and calling additional witnesses. Among the witnesses who testified on behalf of defendant was Burmeister, who had previously pled guilty shortly after his arrest for his involvement in the same incident underlying this appeal.
 

 Burmeister told the court that upon moving from Illinois to North Carolina, he resumed making methamphetamine using the "one-pot" or "shake-and-bake" method. He testified that the garbage bags found in the car and the storage unit both held trash from separate batches of methamphetamine. He also testified that, after defendant's surgery, he would use her to help him obtain the PSE he needed to make methamphetamine. His practice was to give defendant a dose of her medication that made her "doped up." Then, he would take defendant to a pharmacy, put her driver's license in her hand, "grab the card [for the
 
 *567
 
 PSE] off the shelf, stick it in her hand, and walk her up to the window because she didn't know what was going on. She didn't know where we were." A pharmacy tech from the Walmart pharmacy also testified for defendant, who recalled seeing defendant several times in the fall of 2013. According to the tech, defendant was always accompanied by Burmeister, who presented defendant's identification and requested the medication. The tech testified that defendant appeared "sickly," "a little disoriented," and seemed not to know what she needed, or what she was buying.
 

 At the close of all the evidence, the court again denied defendant's motion to dismiss. Defendant was found guilty of each charge and the judge entered two consolidated judgments. In 13 CRS 52279, defendant received a sentence of fifty-eight to eighty-two months, and in 13 CRS 52289, defendant received another sentence of fifty-eight to eighty-two months, to be served at the expiration of the first sentence. Defendant appeals.
 

 _________________________
 

 On appeal, defendant contends the trial court (I) erred in entering judgment on two counts of manufacturing methamphetamine where the trial court failed to instruct the jury on two distinct offenses; (II) lacked jurisdiction to enter judgment for possession of precursor materials; and (III) erred in entering judgment for two counts of manufacturing methamphetamine as the crime was a "continuing offense."
 

 I
 

 Defendant first argues the trial court erred in entering judgment on two counts of manufacturing methamphetamine where the trial court failed to instruct the jury on two distinct offenses. In other words, defendant contends the trial court's failure to so instruct functioned to dismiss one of the manufacturing indictments as a matter of law and, therefore, one conviction arising from that indictment must be vacated.
 

 Defendant has failed to properly preserve this issue for our review by not objecting at trial-either during the charge conference or before the jury retired-to the court's failure to instruct on what defendant now considers relevant instructions. Defendant will not now be heard on this issue. "A party may not make any portion of the jury charge or omission therefrom the basis of an issue presented on appeal unless the party objects thereto before the jury retires...." N.C. R. App. P. 10(a)(2) (2017). "Therefore, defendant is entitled only to review pursuant to the plain error rule."
 
 State v. Call
 
 ,
 
 349 N.C. 382
 
 , 424,
 
 508 S.E.2d 496
 
 , 522 (1998) (citation omitted).
 

 *568
 
 In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is
 
 specifically and distinctly
 
 contended to amount to plain error.
 

 N.C. R. App. P. 10(a)(4) (2017).
 

 However, because defendant failed to "specifically and distinctly" argue plain error on
 
 *660
 
 appeal, she has waived appellate review. We deem this assignment of error waived.
 
 See
 

 State v. Davis
 
 ,
 
 202 N.C.App. 490
 
 , 497,
 
 688 S.E.2d 829
 
 , 834 (2010) ("[B]ecause [the] [D]efendant did not 'specifically and distinctly' allege plain error as required by [our appellate rules], [the] [D]efendant is not entitled to plain error review of this issue." (quoting
 
 State v. Dennison
 
 ,
 
 359 N.C. 312
 
 , 312-13,
 
 608 S.E.2d 756
 
 , 757 (2005) ).
 
 [1]
 

 II
 

 Next, defendant argues the trial court lacked jurisdiction to enter judgment for possession of precursor chemicals because the indictment for that offense was fatally defective and the State's attempt to cure the defect involved a substantial alteration to the indictment. In other words, defendant contends that because the indictment could not be cured at trial by amendment, the trial court lacked jurisdiction as to this offense and defendant's conviction for possession of methamphetamine precursor materials should be vacated. We agree.
 

 "Although defendant did not object at trial to the facial inadequacy of the precursor indictment, '[a] challenge to the facial validity of an indictment may be brought at any time, and need not be raised at trial for preservation on appeal.' "
 
 State v. Oxendine
 
 , --- N.C.App. ----, ----,
 
 783 S.E.2d 286
 
 , 289 (2016) (alteration in original) (quoting
 
 State v. LePage
 
 ,
 
 204 N.C.App. 37
 
 , 49,
 
 693 S.E.2d 157
 
 , 165 (2010) ). "[W]e review the sufficiency of an indictment
 
 de novo
 
 ."
 

 Id.
 

 (quoting
 
 State v. McKoy
 
 ,
 
 196 N.C.App. 650
 
 , 652,
 
 675 S.E.2d 406
 
 , 409 (2009) ).
 

 "To be valid 'an indictment must allege every essential element of the criminal offense it purports to charge.' "
 

 Id.
 

 (quoting
 
 State v. Billinger
 
 ,
 
 213 N.C.App. 249
 
 , 255,
 
 714 S.E.2d 201
 
 , 206 (2011) ). "A conviction based on a flawed indictment must be arrested."
 

 *569
 

 State v. De La Sancha Cobos
 
 ,
 
 211 N.C.App. 536
 
 , 540,
 
 711 S.E.2d 464
 
 , 468 (2011) (citing
 
 State v. Outlaw
 
 ,
 
 159 N.C.App. 423
 
 , 428,
 
 583 S.E.2d 625
 
 , 629 (2003) ).
 

 In
 
 State v. Oxendine
 
 , the indictment charging the defendant with possessing an immediate precursor chemical with intent to manufacture methamphetamine or possessing precursor chemicals "knowing, or having reasonable cause to believe," that the precursor chemicals will be used to manufacture methamphetamine
 

 fail[ed] to allege that [the] defendant, when he possessed those materials, intended to use them, knew they would be used, or had reasonable cause to believe they would be used to manufacture methamphetamine.
 
 The indictment contain[ed] nothing about [the] defendant's intent or knowledge about how the materials would be used
 
 .
 

 --- N.C.App. at ----,
 
 783 S.E.2d at 289
 
 (emphasis added). Instead, the indictment in
 
 Oxendine
 
 alleged that the defendant "unlawfully, willfully and feloniously did possess [precursor chemicals] used in the manufacture of methamphetamine."
 

 Id.
 

 Accordingly, this Court arrested judgment on the defendant's conviction of possession of a precursor chemical because, "[w]ithout an allegation that [the] defendant possessed the required intent, knowledge, or cause to believe, the indictment fail[ed] to allege an essential element of the crime."
 

 Id.
 

 at ----,
 
 783 S.E.2d at 290
 
 .
 

 We agree with defendant, and the State acknowledges, that
 
 State v. Oxendine
 
 is directly applicable to the instant case. Here, on 9 February 2016 during pretrial motions, the district attorney made a motion to amend the second count in the indictment in case 13 CRS 52289, the charge of possession of precursor materials used to produce methamphetamine:
 

 [THE STATE:] ... In this case, we're requesting the language be substituted-knowing or having reasonable cause to believe that the immediate precursor chemical would be used to manufacture methamphetamine, a controlled substance.
 

 THE COURT: Okay. All right. The State's motion is allowed.
 

 *661
 
 As a result, Count II of the indictment in case 13 CRS 52289, was amended (the district attorney's handwritten addition is underlined), to read as follows:
 

 *570
 
 The jurors for the State upon their oath present that on or about the date shown above and in the county named above, the defendant named above unlawfully, willfully and did knowingly possess salt, sulfuric acid, lithium, amonium [sic] nitrate and pseudoephedrine, such items being precursors used to produce methamphetamine
 
 know or have reason to know and cause to believe that the immediate precursor chemical would be used to manufacture a controlled subs
 
 [sic].
 

 Similar to the indictment in
 
 Oxendine
 
 , here, Count II of the indictment in case 13 CRS 52289 also fails to allege an essential element of the crime, namely, defendant's intent or knowledge "about how the materials would be used," i.e., "for manufacture of methamphetamine by h[er]self or someone else."
 
 See
 

 id.
 

 at ----, ----,
 
 783 S.E.2d at 289, 290
 
 .
 

 "The Criminal Procedure Act provides that '[a] bill of indictment may not be amended.' "
 
 De La Sancha Cobos
 
 ,
 
 211 N.C.App. at 541
 
 ,
 
 711 S.E.2d at 468
 
 (alteration in original) (quoting N.C. Gen. Stat. § 15A-923(e) (2009) ). An "amendment" is "any change in the indictment which would substantially alter the charge set forth in the indictment."
 

 Id.
 

 (quoting
 
 State v. Snyder
 
 ,
 
 343 N.C. 61
 
 , 65,
 
 468 S.E.2d 221
 
 , 224 (1996) ). Where an amendment to an indictment involves an element of the crime charged, it is a "material" one.
 
 See
 

 id.
 
 at 542,
 
 711 S.E.2d at 468-69
 
 .
 

 Here, the State attempted to materially amend Count II of the indictment in case 13 CRS 52289 before trial by adding that defendant knew or had reason to know that the immediate precursor materials would be used to manufacture methamphetamine, a controlled substance. This language, which functioned to establish an essential element of the crime of possession of precursor materials, materially amended the flawed indictment and constitutes reversible error. Because this fatally defective indictment could not be cured by the State's material amendment prior to trial, we arrest the trial court's judgment and vacate defendant's conviction on Count II of the indictment in case 13 CRS 52289.
 

 III
 

 Lastly, and in the alternative to defendant's argument in Section I,
 
 supra
 
 , defendant contends the trial court erred in entering judgment for two separate counts of manufacturing methamphetamine because the crime was a single continuing offense and, therefore, one of defendant's convictions should be vacated. We disagree.
 

 *571
 
 "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo
 
 ."
 
 State v. Smith
 
 ,
 
 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007) (citing
 
 State v. McKinnon
 
 ,
 
 306 N.C. 288
 
 , 298,
 
 293 S.E.2d 118
 
 , 125 (1982) ). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied."
 
 State v. Fritsch
 
 ,
 
 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (2000) (quoting
 
 State v. Barnes
 
 ,
 
 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
 
 State v. Smith
 
 ,
 
 300 N.C. 71
 
 , 78-79,
 
 265 S.E.2d 164
 
 , 169 (1980) (citations omitted).
 

 "A continuing offense ... is a breach of the criminal law not terminated by a single act or fact, but which subsists for a definite period and is intended to cover or apply to successive similar obligations or occurrences."
 
 State v. Johnson
 
 ,
 
 212 N.C. 566
 
 , 570,
 
 194 S.E. 319
 
 , 322 (1937). "North Carolina appellate courts have held that analogous activities are continuing offenses."
 
 State v. Grady
 
 ,
 
 136 N.C.App. 394
 
 , 400,
 
 524 S.E.2d 75
 
 , 79 (2000) (citations omitted);
 
 see also
 

 State v. Calvino
 
 ,
 
 179 N.C.App. 219
 
 , 223,
 
 632 S.E.2d 839
 
 , 843 (2006) (vacating one of two convictions for keeping a vehicle for selling a controlled substance as double jeopardy prohibits a conviction for two counts under the
 
 *662
 
 applicable statute as "the offense is a continuing offense"). For example, illegal possession of stolen property is a continuing offense beginning at receipt and continuing until divestment,
 
 see
 

 State v. Davis
 
 ,
 
 302 N.C. 370
 
 , 372-75,
 
 275 S.E.2d 491
 
 , 493-94 (1981), and kidnapping is a continuing offense that lasts from the time of initial confinement until the victim regains free will,
 
 see
 

 State v. White
 
 ,
 
 127 N.C.App. 565
 
 , 570,
 
 492 S.E.2d 48
 
 , 51 (1997).
 

 In
 
 Grady
 
 , the defendant was charged with two counts of maintaining a dwelling for the use of a controlled substance. In determining that maintaining a dwelling is a continuing offense, this Court noted that, if it were not, "the State would be free ... to 'divide a single act ... into as many counts ... as the prosecutor could devise.' "
 
 136 N.C.App. at 400
 
 ,
 
 524 S.E.2d at 79
 
 (alterations in original) (quoting
 
 White
 
 ,
 
 127 N.C.App. at 570
 
 ,
 
 492 S.E.2d at
 
 51 ). This Court also described a situation which would not constitute a continuing offense: "There is no evidence indicating a termination and subsequent resumption of drug trafficking at this dwelling; to the contrary, the evidence shows that drugs were readily available there on request throughout the investigation."
 

 Id.
 

 In other words, because the act of maintaining a dwelling in
 
 Grady
 
 involved drug
 
 *572
 
 transactions which took place over time at a single dwelling, the act of maintaining a dwelling could not be divided into discrete events (it was a continuing offense), and, therefore, the two convictions violated the constitutional prohibition against double jeopardy.
 

 Id.
 

 The crime of manufacturing a controlled substance "means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance by any means...."
 
 N.C. Gen. Stat. § 90-87
 
 (15) (2015). In the instant case, two separate methamphetamine labs, or the evidence thereof, were discovered in the trunk of the Taurus and in the storage unit. In both locations, various materials related to the manufacture of methamphetamine were discovered in black garbage bags. Defendant argues that this "evidence suggests a single continuous operation where the same participants were making batches of the drug, with various stages of the preparation and processing occurring in locations which included the residence, the car, and the storage locker."
 

 We disagree with defendant's characterization. In the present case, the evidence at trial demonstrated termination, not continuation, of separate processes of manufacturing methamphetamine in more than one location. In both locations-the trunk of the car and the storage unit-the chemical reaction process had reached the end stage where gas had been introduced into the liquid to precipitate a useable form of methamphetamine. In other words, the two separate garbage bags found in two distinct locations each contained evidence that separate manufacturing offenses had been completed. In fact, defendant's own witness made the point that the garbage bags held trash from separate batches of methamphetamine manufactured on separate dates. While we do not think the statute necessarily requires a completed process-"manufacturing a controlled substance means the production,
 
 preparation
 
 , propagation, compounding, conversion, or processing of a controlled substance by any means,"
 

 id.
 

 § 90-87(15) (emphasis added)-based on the facts present in the instant case, it is clear that two separate and distinct locations contained two separate methamphetamine manufacturing processes. Accordingly, the trial court did not err by entering judgment for two separate counts of manufacturing methamphetamine. Defendant's argument is overruled.
 

 NO ERROR IN PART; JUDGMENT ARRESTED AND CONVICTION VACATED IN PART.
 

 Judge INMAN concurs.
 

 Judge MURPHY concurs as to Parts I and II, and concurs in the result in Part III by separate opinion.
 

 MURPHY, Judge, Concurring as to Parts I and II and the result of Part III.
 

 *573
 
 I concur in the Court's opinion as to Parts I and II and the result of Part III, but I write separately to express my concerns regarding the application of N.C.G.S. § 90-87(15) to the manufacture of methamphetamine.
 

 *663
 
 In the present case, there were three locations where drug manufacturing material was found: in Maloney and Burmeister's bedroom, in the storage unit Maloney had rented, and in the car the couple had borrowed from Brass. Indictments were filed regarding the materials found in the car and storage unit, but not the bedroom. Defendant argues that the manufacture of a controlled substance, lacking any specified duration or particular culmination, is a continuing offense. The majority emphasizes the separate locations of the materials found. However, I would hold that the locations of the items found are not controlling on the number of counts of manufacturing methamphetamine as the items found were only indicative of past "one-pot" manufacturing or the intention and ability to "cook" in the future.
 

 As the majority points out, there were three empty bottles evidencing past cooks. I believe that each one-pot cook constituted an act of manufacturing methamphetamine under the statute as it is the bulk of the eventual completed process of turning chemicals into the controlled substance. While I arrive at the same result as the majority today, had all three bottles been in the same location I still would have found no error as they were merely trash and evidence of past illegal conduct.
 

 As was discussed at length during arguments of counsel, there are many ways to analyze one continuing process as opposed to individual acts of manufacturing methamphetamine. It is a reasonable reading of the statute and our case law that multiple bottles cooked in the same room and producing hundreds of grams of methamphetamine without a significant break in production could result in only one conviction of manufacturing. Alternatively, it is just as reasonable a reading of the statute and case law that each time an additional amount of catalyst is introduced into the chemical solution the bottle starts a new chemical reaction and is an individual, though small, manufacture of
 
 *574
 
 methamphetamine which could reasonably result in the conviction of multiple counts from a single one-pot cook.
 

 First-time offenders face a minimum presumptive sentence of 58 to 82 months for each offense of manufacturing methamphetamine, thus it is of great importance to the public that statutes such as N.C.G.S. § 90-87(15) are well-defined. The current statute and case law, even after today's decision, leave open to interpretation what constitutes one continuing offense of manufacture versus several separate instances.
 

 I concur in today's result, but believe it is extremely important for this matter to be addressed for future decisions and to ensure the equal application of our statutes across the state. However, as an error-correcting court, we do not have the power to address policy concerns that may exist for various conflicting factual situations. This matter should be readdressed by the General Assembly or our Supreme Court.
 

 [1]
 

 Further, we reject defendant's attempt to recast this issue on appeal as structural error requiring
 
 de novo
 
 review and dismissal as a matter of law.