ARROWOOD, Judge.
Mindy Marquita Locklear ("defendant") appeals from judgments entered on her convictions of manufacturing methamphetamine, conspiracy to manufacture methamphetamine, and possession of immediate precursor chemicals. For the reasons stated herein, we find no error.
I. Background
On 26 February 2016, defendant was arrested and charged with manufacturing methamphetamine, conspiracy to manufacture methamphetamine, and possession of immediate precursor chemicals. On 4 April 2016, a Johnston County Grand Jury indicted defendant on these charges. The matter came on for trial at the 20 March 2017 Criminal Session of Johnston County Superior Court, the Honorable Thomas H. Lock presiding. The State's evidence tended to show as follows.
At 1:04 a.m. on 26 February 2016, a Cleveland County Fire Department crew responded to a call reporting an unconscious person in a Walmart parking lot. When the crew arrived, defendant was unconscious, lying on the ground outside the passenger side of a vehicle registered in her name. Defendant's boyfriend, Dustin Bowling ("Bowling"), stood outside the vehicle. Defendant became responsive shortly after emergency medical services arrived. While assisting defendant, a member of the crew, Captain, now Assistant Chief, Ryan Benson, observed Bowling "slowly gather[ ] things out of the car on the passenger side and [go] around to the trash can in front of Walmart and [dispose] of the items." Captain Benson reported this observation to the first deputy sheriff that arrived.
The deputy investigated the trash can and noted the trash had recently been emptied. Inside the trash can, he found:
a bag with two empty Zippo lighter fluid cans, a needle that, with what [defendant] told [him] in the ambulance, [he] suspected to have heroin inside of it. A stack of unused coffee filters. Two empty glass mason jars. And there was also a blue bag that contained a grinder, a wadding of plastic tubing, a small glass jar, four containers for the grinder, two packs of unopened CVS cold packs. And then inside, there was also a plastic 2-liter drink bottle that was about half full with an unknown clear liquid.
Perceiving these items to be "commonly used in the manufacture of methamphetamines[,]" he contacted a narcotics detective, Deputy Tiffany Stewart.
Deputy Stewart and her lieutenant, Rodney Langdon, ("Lieutenant Langdon") processed the scene. The items seized from the trash can were placed in defendant's vehicle, which was towed to the Johnston County Sheriff's Office impound lot.
Defendant was released from the hospital and transported to the Johnston County Sheriff's Office and placed under arrest that same morning. Deputy Stewart and Lieutenant Langdon attempted to interview her; however, they terminated the interview because defendant did not appear sober. When asked if she had anything on her, defendant removed a small baggie with two coffee filters with white residue in it from her pocket. The North Carolina State Crime Laboratory (the "Crime Laboratory") later determined the white residue was methamphetamine.
On 26 February 2016, Agent Jessica Cadwallader ("Agent Cadwallader") searched defendant's car in the Johnston County Sheriff's Office impound lot. During her search, Agent Cadwallader seized and inventoried 51 items. She sent two glass vials containing a sample from the 2-liter bottle, five oblong white pills, the white residue in the coffee grinder, and the brown powder material in the clear plastic bags that were found in the car, and the white powder in the coffee filters found on defendant's person to the Crime Laboratory. The Crime Laboratory determined the vials contained 483 grams of a liquid containing methamphetamine; the pills were dimethyl sulfone, a diluent; the white residue in the coffee grinder did not contain a controlled substance or pseudoephedrine ; the brown powder contained fentanyl, a synthetic opioid; and the white powder in the coffee filters contained methamphetamine.
On 11 March 2016, Deputy Stewart and Detective Jay Creech interviewed defendant. Deputy Stewart read defendant her Fifth and Sixth Amendment rights, which defendant acknowledged, and waived in writing. After waiving her rights, defendant stated it was the first time she had been "clean" in ten years. She explained that she usually cooked methamphetamine at random locations and wooded areas, and that she and Bowling went to Walmart on 26 February 2016 intending to cook methamphetamine, having purchased the items they needed to cook methamphetamine prior to going to the Walmart. She also reported using heroin on 25 February 2016, continuing into the early hours of 26 February 2016.
Defendant further stated that she had cooked methamphetamine daily, that she began doing so six months earlier, and that she had used methamphetamine for approximately two years. She explained she had stopped cooking methamphetamine herself two months prior to 26 February 2016 because her hands had become raw; however, she had taught Bowling how to cook it. She also stated that she and Bowling would throw trash from cooking methamphetamine into random trash cans.
Deputy Creech searched defendant's name on a National Precursor Log Exchange database ("NPLEX"), a database of pseudoephedrine purchases, which showed that defendant purchased a 48-count box of the drug Wal-Phed D, which contained 1.44 grams of pseudoephedrine, on 24 February 2016 at 12:34 a.m.
At the close of the State's evidence, defendant moved to dismiss the charges for insufficient evidence. The trial court denied the motion. Defendant did not present evidence. Defendant renewed her motion to dismiss for insufficiency of the evidence, which the trial court again denied.
The jury found defendant guilty of all charges. The trial court consolidated the manufacturing methamphetamine conviction with the conspiracy to manufacture methamphetamine conviction, and imposed a 60 to 84 month term of confinement. The trial court also imposed a 15 to 27 month term of confinement for the possession of precursor chemicals conviction, to be served concurrently with the consolidated sentence.
Defendant appeals.
II. Discussion
Defendant argues that the trial court erred by failing to grant her motion to dismiss the manufacture of methamphetamine charge, and that she received ineffective assistance of counsel. We address each argument in turn.
A. Motion to Dismiss
Defendant argues the trial court erred when it denied her motion to dismiss the manufacture of methamphetamine charge because there was insufficient evidence that manufacturing took place in the Walmart parking lot on 26 February 2016. At the outset, we note that the State had the burden to prove that defendant feloniously manufactured methamphetamine on or about 26 February 2016; thus, the State did not have to prove defendant feloniously manufactured methamphetamine on 26 February 2016, as alleged by defendant's brief. We hold that the State met this burden, and the trial court properly denied defendant's motion to dismiss for the reasons that follow.
"This Court reviews the trial court's denial of a motion to dismiss de novo ." State v. Smith , 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Fritsch , 351 N.C. 373, 378, 526 S.E.2d 451, 455, cert. denied , 531 U.S. 890, 148 L.Ed. 2d 150 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith , 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980) (citations omitted).
"The essential elements of the offense of manufacturing methamphetamine do not include what form the manufacturing took, but rather simply that the defendant (1) manufactured (2) a controlled substance." State v. Oxendine , 246 N.C. App. 502, 508, 783 S.E.2d 286, 291, disc. review denied , --- N.C. ----, 787 S.E.2d 24 (2016) (citation omitted).
"Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance by any means, whether directly or indirectly, artificially or naturally, or by extraction from substances of a natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis; and "manufacture" further includes any packaging or repackaging of the substance or labeling or relabeling of its container ....
N.C. Gen. Stat. § 90-87(15) (2017).
The evidence at trial showed that officers responded to a call reporting an overdose in a Walmart parking lot on 26 February 2016. The officers found defendant and Bowling outside defendant's vehicle in the parking lot. Bowling was observed taking items from the car and placing them in a trash can. Defendant was approximately five feet from the trash can, which an officer later discovered contained a two-liter bottle containing 436 grams of liquid containing methamphetamine. The trash can also contained other supplies used in the production of methamphetamine. These items, along with items found in defendant's car included: a funnel, packages of lithium batteries, acetone, cold packs containing ammonium nitrate, airline tubing, a coffee grinder with white residue, used and unused coffee filters, Zippo lighter fluid containers, a glass jar containing clear acidic liquid, boxes of salt, dimethyl sulfone pills, which are used to cut methamphetamine, syringes, and fentanyl. Additionally, officers later seized powder methamphetamine from defendant's person.
Despite this evidence, defendant argues that the manufacturing charge should have been dismissed because no pseudoephedrine, or packaging thereof, was recovered, some of the items used to manufacture methamphetamine that were found were sealed and unused, and no "sludge" byproduct, which results when methamphetamine is manufactured, was recovered. We disagree. There was evidence that defendant bought a drug containing pseudoephedrine less than 48 hours before she was hospitalized, and although the age of the liquid containing methamphetamine could not be determined, a reasonable jury could find from the evidence before it that the defendant, by herself or with Bowling, manufactured the liquid containing methamphetamine sometime between 24 and 26 February 2016.
In addition to the physical evidence at the scene, defendant told officers that she went to the Walmart with the intent to cook methamphetamine with Bowling, that she purchased the items she needed prior to going to Walmart, that she taught Bowling to cook methamphetamine, and that she and Bowling threw the supplies they used for cooking methamphetamine into trash cans once they completed the process. Considering the totality of the evidence in the light most favorable to the State, we hold there was substantial evidence supporting the manufacturing methamphetamine charge against defendant. Accordingly, the trial court did not err by denying defendant's motion to dismiss the charge of manufacturing methamphetamine.
B. Ineffective Assistance of Counsel
Defendant argues she was deprived of her right to effective assistance of counsel when her attorney failed to file a pre-trial motion to suppress because her statement and waiver of counsel were not given voluntarily, knowingly, and intelligently. Defendant specifically contends her statement and waiver were not given voluntarily, knowingly, and intelligently because: (1) she was in custody when the deputies approached her for a statement; (2) the nature of her statement and the timing of her bond reduction hearing indicated promises were made to induce her statement; (3) her record indicates she had no experience with the justice system; and (4) her mental condition was fragile. As a result of these alleged circumstances, defendant argues she was prejudiced by her counsel's failure to file a motion to suppress, as it is reasonably probable the trial court would have granted the motion to suppress absent her counsel's failure to file the motion. We decline to address this argument.
Generally, "claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal." State v. Stroud , 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001) (citations omitted). Such claims will only be decided on the merits when brought on direct appeal if "the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Thompson , 359 N.C. 77, 122-23, 604 S.E.2d 850, 881 (2004) (citation and internal quotation marks omitted). "Accordingly, 'on direct appeal we must determine if ... ineffective assistance of counsel claims have been prematurely brought,' in which event 'we must dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent [motion for appropriate relief] proceeding.' " State v. McNeill , --- N.C. ----, ----, 813 S.E.2d 797, 811 (2018) (quoting State v. Campbell , 359 N.C. 644, 691, 617 S.E.2d 1, 30 (2005) (citation and internal quotation marks omitted) ).
Here, the record before us contains no evidence as to whether any promises were made to induce defendant's statement. Moreover, the evidence is insufficient as to whether defendant had prior experience with the criminal justice system and whether her mental state was fragile when she gave the statement. Therefore, based on the record before us, we are unable to evaluate her claim that these factors demonstrate that her statement and waiver of counsel were not given voluntarily, knowingly, and intelligently. Further investigation is required, and we dismiss this argument without prejudice to defendant's right to file a motion for appropriate relief in the trial court.
III. Conclusion
For the forgoing reasons we hold the trial court did not commit error and we dismiss defendant's ineffective assistance of counsel argument without prejudice to defendant's right to file a motion for appropriate relief.
NO ERROR IN PART, DISMISSED IN PART.
Report per Rule 30(e).
Judges CALABRIA and MURPHY concur.