IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-694

No. COA20-610

Filed 21 December 2021

Cumberland County, No. 16 CRS 2688-94, 2697-2701

STATE OF NORTH CAROLINA

v.

ROBIN APPLEWHITE

Appeal by defendant from judgments entered 5 March 2019 by Judge Thomas H. Lock in Cumberland County Superior Court. Heard in the Court of Appeals 3 November 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General A. Mercedes Restucha-Klem, for the State.*

> *Michael E. Casterline for defendant-appellant.*

TYSON, Judge.

Robin Applewhite ("Defendant") appeals from judgments entered upon a jury's verdicts finding him guilty of twelve counts of human trafficking, eleven counts of promoting prostitution and four counts of conspiracy to promote prostitution and attaining habitual felon status. We find no error.

## I. Background

Defendant met several adult women, A.C., H.M., A.B., M.F., J.O. and E.C.

between December 2012 and March 2015 (parties agree to permit use of pseudonyms to protect the identity of the victims). Defendant capitalized on the women's addictions to heroin and dire economic circumstances to manipulate them to engage in prostitution arranged *via* online advertisements set up by Defendant and his wife, Samantha Rivard ("Rivard"). The women gave money paid and received from engaging in sexual acts to Defendant in exchange for heroin, food, transportation, and a place to live.

¶ 3    Defendant withheld drugs, food, sleep and means of communication from the women with family and friends. He locked the women in a hotel room or in the basement of his own home on occasions.

¶ 4    Defendant drove the women across North Carolina, from Fayetteville to Charlotte, Raleigh, Wilmington, and across state lines to Virginia, South Carolina, and Florida, to engage in sexual acts in exchange for money. Rivard posted the women's images on Backpage, an online classified advertising website, to solicit and schedule customers. A.C.'s advertisement was posted at least 197 times in three cities. M.F. was posted 219 times in at least three cities.

¶ 5    In March 2015, J.O. alleged she was forced to perform sexual acts for money against her will, while she was restrained in a basement and after being transported to Charlotte. On 18 March 2015, Defendant was arrested and charged with second-degree kidnapping, human trafficking and sexual servitude. On 2 April 2015, police

searched the home located on Cedarwood Avenue in Spring Lake where J.O. alleged she had been held. Rivard was also arrested.

¶ 6        Defendant was indicted on 14 November 2016 for multiple charges of human trafficking, promoting prostitution, and conspiring to promote prostitution against six alleged victims. On 2 January 2018, corresponding habitual felon indictments were issued in each of the previously indicted files. Defendant was also indicted on the following additional charges against alleged victim J.O. for second degree kidnapping and attaining habitual felon status.

## A. Competency Hearing

¶ 7        Defendant was ordered to undergo an examination at Central Regional Hospital to determine his capacity to proceed to trial. Dr. Charles Vance, a forensic psychiatrist, conducted an initial forensic interview on 8 September 2016, with a final evaluation dated 10 November 2016. He found Defendant was mentally competent to proceed to trial. On 18 January 2017, Superior Court Judge James Ammons conducted a competency hearing. The court heard Dr. Vance's testimony concerning his evaluation of Defendant and his opinion concluding Defendant understood the charges against him and was competent to stand trial. Defendant was found competent to stand trial.

¶ 8        On 29 January 2019, another hearing on Defendant's capacity was held by Superior Court Judge Thomas Locke. Defendant was represented by counsel. On its

own motion, the court received into evidence a report submitted from Dr. Vance dated

October 2016. The court engaged in lengthy discussions with Defendant regarding

his medical condition, capacity to proceed, and his stated desire to represent himself

throughout the hearing. The court entered its findings and conclusion:

> THE COURT: As seen by Dr. Charles Vance at Central Regional Hospital during the period of time between September 14, 2016 and October 5, 2016. That Dr. Vance conducted an extensive examination of the defendant and prepared a nine-page report, that Dr. Vance concluded that the defendant is, quote, quite cynical and mistrustful, closed quote, in that he suffers from an unspecified personality disorder, cocaine use disorder, opiate use disorder, illness anxiety disorder and has some history of malingering but that *Dr. Vance found that Mr. Applewhite's displayed behaviors do not rise to the level of negating his fundamental capacity to proceed to trial.* Dr. Vance rather opined *that Mr. Applewhite demonstrated a good understanding of the nature and object of the proceedings against him and that he likewise comprehended his position in reference to these proceedings.* In fact, Mr. Applewhite does maintain the ability to work with his attorney in a rational and reasonable manner in the preparation of his defense if he so chooses. Dr. Vance further found *that in his opinion Mr. Applewhite was competent.* Based upon this report, based upon the representations of [counsel] . . . he has not questioned the defendant's mental capacity, based upon the Court's observations of the defendant and the state moreover not questioning the defendant's capacity, the Court does find and concludes as a matter of law that the defendant is able to understand the nature and object of the proceedings against him. He is able to comprehend his own situation in reference to the proceedings and he is able to assist in the defense in a rational or reasonable manner in that he does possess the capacity to proceed. (emphasis supplied).

## B. Trial

Defendant was represented by several attorneys prior to waiving his right to counsel and choosing to proceed *pro se* to trial.

On the morning of trial on 18 February 2019, and numerous times throughout the pendency of the case, Defendant demanded to represent himself. Defendant waived his right to counsel. The court appointed stand-by counsel.

Defendant filed a motion to continue the trial, stating he did not believe he was mentally competent due to a medical condition which caused an increase in ammonia in his blood to a point where he can become delusional. The trial court considered and determined Defendant was taking his medication and was not actively experiencing delusions. Based on its own observations and interactions with Defendant, the court denied Defendant's motion to continue the trial. The court periodically confirmed Defendant received his medication throughout the trial.

During trial, A.C. testified numerous other women had similar working arrangements with Defendant and Rivard. The couple posted classified ads on Backpage and rented hotel rooms in various cities, including Fayetteville, Greensboro, Raleigh, Charlotte, Wilmington, Jacksonville, Roanoke, Myrtle Beach and Orlando. A.C. testified she relied upon Defendant to supply the heroin she needed to avoid going into withdrawal and for her meals. A.C. testified Defendant might dispense food and drugs generously, or, if he was upset, would withhold them.

H.M. and A.B. testified to having similar experiences with Defendant and Rivard, as A.C. had described. They also testified regarding M.F., her addiction to heroin, and being held by Defendant for acts of sexual servitude. M.F. died before Defendant's trial began.

The jury returned unanimous verdicts and found Defendant guilty of five counts of human trafficking A.C. over a period of two months; two counts of human trafficking H.M over a period of two months; two counts of human trafficking M.F. over a period of one month; and three counts of trafficking A.B. over a period of fifteen months. The jury found Defendant not guilty of two counts of human trafficking E.C. and not guilty of three counts of human trafficking J.O.

The State calculated fourteen prior record points and sentenced Defendant as a prior record level five. The fourteen prior record points were based upon Defendant's four previous felony convictions and two previous Class 1 misdemeanor convictions, which were separate from the three prior felony convictions used to establish Defendant's habitual felon status.

Defendant was ordered to register as a sex offender and received an active total sentence of 2,880 to 3,744 months. Defendant appeals.

## II. Jurisdiction

This appeal is properly before this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a) (2019).

### III. Issues

Defendant raises four issues on appeal, whether: (1) the trial court abused its discretion in allowing Defendant to represent himself; (2) the trial court lacked subject matter jurisdiction over the human trafficking charges; (3) the trial court erred in entering judgment for multiple counts of human trafficking for each victim; and, (4) the trial court erred in determining Defendant's prior record level.

### IV. Argument

### A. Defendant's Competency to Represent Himself

"[W]here matters are left to the discretion of the trial court, appellate review is limited to a determination of whether there was a clear abuse of discretion." *State v. Beck*, __ N.C. App. __, ___, 2021-NCCOA-305, ¶ 28, 861 S.E.2d 575, 582 (2021) (citation omitted).

Defendant argues the trial court's statements concluding he had an "absolute right" to represent himself and the court's failure to consider whether Defendant fell into the "gray area" of being competent enough to waive counsel is a mistake of law that requires a new trial.

The Sixth Amendment to the Constitution of the United States gives a criminal defendant the "right to proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807, 45 L. Ed. 2d 562, 566 (1975).

Our Supreme Court has considered whether a defendant, who falls within the

"borderline competent" or "gray area" of defendants with mental illness, should be precluded from self-representation. *State v. Lane*, 365 N.C. 7, 18, 707 S.E.2d 210, 217 (2011). "Borderline competent" was defined as "defendants who are competent to stand trial[,] but nonetheless lack the capacity to conduct trial proceedings without the assistance of counsel." *Id.* at 19, 707 S.E.2d at 218.

¶ 23     In *Lane*, the defendant insisted on proceeding *pro se* on first-degree murder and statutory rape charges. *Id.* at 18, 707 S.E.2d at 217. During his competency hearing, the court concluded the defendant was largely illiterate, suffered from an anxiety disorder and possible Post Traumatic Stress Disorder, but determined defendant's emotional, psychological, and mental difficulties did not render the defendant incompetent to proceed to trial and to make his own decisions. *Id.* at 16-17, 707 S.E.2d at 216. The defendant requested standby counsel to represent him on the day of trial. *Id.* The defendant was found guilty of first-degree murder and felony murder, first-degree kidnapping, first-degree statutory rape, first-degree statutory sex offense, and indecent liberties. *Id.* at 17, 707 S.E.2d at 217.

¶ 24     Our Supreme Court remanded to the trial court to determine if the defendant fell into the "borderline competent" category. *Id.* at 18, 707 S.E.2d at 217. Upon remand, and based on expert testimony of a psychiatrist and two competency hearings, the trial court found:

        defendant at all times understood the nature and object of

the proceedings against him, comprehended his own situation in reference to those proceedings, and was able to assist in his defense in a rational manner, such that any . . . failure regarding his comprehension of his own situation in reference to the proceedings was or would be a result of defendant's willful, volitional failure to consider discovery and the evidence against him.

*Id.* at 18–19, 707 S.E.2d at 217. Our Supreme Court concluded the defendant received a fair trial, free of prejudicial error. *Id.* at 40, 707 S.E.2d at 230.

The Supreme Court of the United States addressed this issue and held "a defendant who waives his right to the assistance of counsel [does not have to] be more competent than a defendant who does not, since there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights." *Godinez v. Moran*, 509 U.S. 389, 399, 125 L. Ed. 2d 321 (1993).

Further, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself." *Id.* at 399, 125 L. Ed. 2d at 321. "[T]he trial judge will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Lane,* 365 N.C. at 21, 707 S.E.2d at 219 (quotation marks omitted).

The Supreme Court stated the standard for competency "is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable

degree of rational understanding and has a rational as well as factual understanding of the proceedings against him." *Godinez*, 509 U.S. at 396, 125 L. Ed. 2d at 330 (citation and quotation marks omitted).

¶ 28        In *Indiana v. Edwards*, the defendant had three competency hearings and the trial court dealt with a defendant who had been diagnosed with schizophrenia, repeatedly deemed incompetent by four separate disinterested psychiatrists and the court, based upon incoherent writings, delusions, and continuing schizophrenia, such that the State was worried about his ability to proceed *pro se*. *Indiana v. Edwards*, 554 U.S. 164, 167-69, 171 L. Ed. 2d 345, 351-52 (2008). Unlike the defendant in *Edwards*, Defendant here did not have a long-established and documented history of serious mental illness.

¶ 29        Here, the trial court recognized, as the Supreme Court did in *Edwards*, that neither the State could limit representation, nor that Defendant lacked the mental capacity to conduct his own trial. *See Edwards*, 554 U.S. at 173, 171 L. Ed. 2d at 355. *Godinez* not *Edwards* applies to the instant case. Nothing in *Edwards* overrules the holding in *Godinez* that the Constitution of the United States permits a defendant who is competent to stand trial, may also waive his right to counsel and represent himself. *Edwards*, 554 U.S. at 172-174, 171 L. Ed. 2d at 353-55.

¶ 30        The record and the substantial interaction between the court and Defendant shows the court undertook a thorough and realistic account of Defendant's mental

capacities and competence before concluding Defendant was competent to waive counsel and to proceed *pro se*. As in *Lane*, separate trial judges held two competency hearings regarding Defendant's mental capacity.

¶ 31       After interacting with Defendant, considering Defendant's medical conditions, testimony from Dr. Vance, and Dr. Vance's forensic psychiatric evaluation of Defendant, two judges ruled Defendant was competent to proceed and to represent himself.

¶ 32       The trial court gave Defendant several opportunities to consider whether he wanted to be represented by counsel, and inquired whether Defendant's decision was being made freely, voluntarily, and intelligently. Defendant demanded to represent himself numerous times.

¶ 33       Even were we to agree the trial court erred in allowing Defendant to represent himself, Defendant has made no showing he was prejudiced by his lack of counsel. Stand-by counsel was available to assist and was consulted to assist Defendant in navigating the proceedings.

¶ 34       Defendant was appointed several attorneys and disagreed with their methods of representation and recommendations. Any error in regard to his lack of representation claims was invited by Defendant. For these reasons, and because Defendant's self-representation had no bearing on this issue, Defendant cannot show prejudice. Further, given the overwhelming evidence against Defendant of criminal

activity, any asserted error was harmless beyond a reasonable doubt. The trial court's conclusion that Defendant was competent to stand trial and waive his right to counsel is affirmed.

## B. Sufficiency of Indictments

¶ 35        Defendant argues the indictments against him are insufficient because they are too general and were drafted to make it unclear of what conduct he was being accused.

¶ 36        The purpose of an indictment is "to identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime." *State v. Creason*, 313 N.C. 122, 130, 326 S.E.2d 24, 29 (1985).

¶ 37        "[W]here an indictment is alleged to be invalid on its face, thereby depriving the trial court of its jurisdiction, a challenge to that indictment may be made at any time." *State v. Wallace*, 351 N.C. 481, 503, 528 S.E.2d 326, 341 (2000). Under the North Carolina Constitution, an indictment is sufficient if it alleges every element of the offense. *See State v. Greer*, 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953).

¶ 38        Here, Defendant was charged in seventeen indictments with human trafficking of six different victims. The prosecutor charged Defendant with three counts of trafficking J.O. in a five-day period, five counts of trafficking A.C. in a thirteen-month period, two counts of trafficking H.M in a three-month period, two

counts of trafficking E.C. in a one-month period, three counts of trafficking A.B. in a sixteen-month period and one count of trafficking M.F. in a thirteen-month period. Each indictment for human trafficking included the following language:

> Between and including [DATE RANGE], in the County named above, the defendant named above unlawfully, willfully, and feloniously did knowingly or in reckless disregard of the consequences of the action, did recruit, entice, harbor, transport, provide, or obtain by any means another person [NAME OF VICTIM] with the intent that the other person, [NAME OF VICTIM], be held in sexual servitude. This act was in violation of North Carolina General Statutes Section 14-43.11(a).

¶ 39        N.C. Gen. Stat. § 14-43.11(a)(i) (2019) is unambiguous and defines "human trafficking" as occurring when the perpetrator "knowingly or in reckless disregard of the consequences of the action recruits, entices, harbors, transports, provides, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude." The language used in the indictments in this case tracks the language of the statute word for word.

¶ 40        The indictments allege every element of the offense within a specific timeframe for each separate victim. *See Greer*, 238 N.C. at 327, 77 S.E.2d at 919. The indictments clearly allege the crimes of which Defendant was being charged and gave him notice to prepare and assert his defense. *See Creason*, 313 N.C. at 130, 326 S.E.2d at 29.

¶ 41        Defendant does not identify any essential element of human trafficking

omitted in his indictments. He alleges the indictments fail to specify facts that will protect him from double jeopardy, or, alternatively, that the indictments are multiplicitous. "If Defendant required greater specificity, he could have moved for a bill of particulars under N.C. Gen. Stat. § 15A-925 (2019) and/or for a special verdict sheet under N.C. Gen. Stat. § 15A-1340.16 (2019)." *State v. Flow*, __ N.C. App. __, __, 2021-NCCOA-183 ¶ 70, 859 S.E.2d 224, 233 (2021). Defendant failed to move for either clarification here.

¶ 42 The State's case provided an in-depth explanation of how it arrived at the indictments charged against Defendant. The prosecutor took into consideration the victims' statements and evidence available when Defendant was charged with seventeen counts of human trafficking. These generalizations are risks prosecutors take in cases, as in illicit drug sales or child sex crimes, where multiple offenses may occur and continue for long periods of time.

¶ 43 Upon a later claim for double jeopardy, which issue is not before us, the burden would be on the State to find and present new evidence for other crimes not alleged here. Defendant's argument the indictments are insufficient is without merit and overruled.

### C. Human Trafficking as a Separate Offense

### *1. Standard of Review*

¶ 44 Whether convictions are part of one continuing transaction such that the

multiple convictions violate double jeopardy, a motion to dismiss preserves the issue for appellate review. *State v. Calvino*, 179 N.C. App. 219, 632 S.E.2d 839 (2006). This issue is preserved for review by Defendant's motion to dismiss for insufficient evidence. In reviewing the trial court's denial of a motion to dismiss, this Court determines whether substantial evidence of each essential element of the offense is admitted, when the evidence is reviewed in the light most favorable to the State. *State v. Lynch*, 327 N.C. 210, 393 S.E.2d 811 (1990).

### 2. *Separate or Continuous*

¶ 45      N.C. Gen. Stat. § 14-43.11 states:

> (a) A person commits the offense of human trafficking when that person (i) knowingly or in reckless disregard of the consequences of the action recruits, *entices*, *harbors*, transports, provides, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude or (ii) willfully or in reckless disregard of the consequences of the action causes a minor to be held in involuntary servitude or sexual servitude.

> (b) A person who violates this section is guilty of a Class C felony if the victim of the offense is an adult. A person who violates this section is guilty of a Class B2 felony if the victim of the offense is a minor.

> (c) *Each violation of this section constitutes a separate offense and shall not merge with any other offense.*

N.C. Gen. Stat. § 14-43.11(a)-(c) (2019) (emphasis supplied).

¶ 46      Defendant argues the General Assembly did not intend to punish an offender

multiple times for what he asserts is the same continuing crime by allowing a prosecutor to charge countless offenses for each separate act an offender took in order to hold a victim in sexual servitude. Defendant's and the dissent's interpretation of the statute disregards the words "entice" and "harbor" and would result in perpetrators exploiting victims for multiple acts, in multiple times and places, regardless of the length of the timeframe over which the crimes occurred as long as the Defendant's illegal actions and control over the victim were "continuous."

¶ 47        Whether Defendant's actions violate the elements of the statute is ultimately a matter of fact for the jury to determine. The jury acquitted Defendant on five counts of human trafficking of J.O. and E.C. Sufficient evidence was presented to the jury to enable it to unanimously reach its verdicts with care and discernment as between the evidence presented of various charges and multiple victims.

¶ 48        The statute and intent of the General Assembly are clear. Defendant's arguments asserting human trafficking is a continual offense, analogous to kidnapping without a separate asportation, and may only be charged as one crime for each victim is without merit and overruled.

### 3. *Substantial Evidence*

¶ 49        Defendant acknowledges the plain language of the human trafficking statute specifically indicates each violation constitutes a separate offense and does not merge. N.C. Gen. Stat. § 14-43.11(c). He argues what is not clear is what facts must coalesce

to constitute each violation.

¶ 50    "Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). "[T]he question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. . . . the jury [is] to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty." *State v. Poole*, 24 N.C. App. 381, 384, 210 S.E.2d 529, 530 (1975) (citations and quotation marks omitted).

¶ 51    Here, three victims and Rivard testified how Defendant controlled the women with heroin, advertised them through multiple solicitations on online message boards, and required them to perform multiple sexual acts with customers for money in exchange for drugs, food, transportation, and shelter. All three women testified Defendant had kept the victims in his home or in hotel rooms and drove them to a number of cities for them to be held in sexual subjugation and insisted they communicate with every customer. These victims also corroborated the testimony of other victims, despite the fact that many of them had not previously met. Viewed in a light most favorable to the State, Defendant has presented nothing to warrant reversal of the trial court's denial of Defendant's motion to dismiss.

¶ 52    Whether sufficient evidence supports each conviction of human trafficking is

for a jury to decide upon its review of the duly-admitted evidence and the demeanor and credibility of the witnesses, properly instructed on the applicable laws. The trial court's denial of Defendant's motion to dismiss is affirmed.

## D. Prior Record Level

### *1. Standard of Review*

¶ 53    "The determination of an offender's prior record level is a conclusion of law that is subject to *de novo* review on appeal. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Green*, 266 N.C. App. 382, 385, 831 S.E.2d 611, 614 (2019) (internal citations and quotation marks omitted).

### *2. Stipulation*

¶ 54    Defendant argues his 1994 possession of drug paraphernalia conviction should not have been used in determining his prior record level. When assessing a sentence imposed by the trial court, the standard of review is to determine "whether the sentence is supported by evidence introduced at the trial and sentencing hearing." *State v. Sanders*, 225 N.C. App. 227, 228, 736 S.E.2d 238, 239 (2013).

¶ 55    Each of a defendant's prior convictions, proven by a preponderance of the evidence, is assigned points, which are used to calculate the prior record level of a felony offender. *See* N.C. Gen Stat. §15A-1340.14 (2019). Proof of a prior conviction can be established by, "(1) a stipulation of the parties," or "(4) [a]ny other method

found by the court to be reliable." N.C. Gen. Stat. § 15A-1340.14(f)(1),(4) (2019). "[A] defendant need not make an affirmative statement to stipulate to his . . . prior record level . . . particularly if [he] had an opportunity to object to the stipulation in question but failed to do so." *State v. Alexander*, 359 N.C. 824, 829, 616 S.E.2d 914, 918 (2005).

¶ 56 In *State v. Boyd*, a *pro se* defendant made no comment from which this Court could infer his stipulation to his prior record. *State v. Boyd*, 200 N.C. App. 97, 104, 682 S.E.2d 463, 468 (2009). While the court reviewed defendant's worksheet, the defendant asked, "What does that mean?" *Id*. The defendant clearly did not understand the prior record worksheet, let alone stipulate to it. This Court compared the defendant in *Boyd* with the defendant in *State v. Alexander*. In *Alexander*, the defendant's counsel recognized the defendant had no prior convictions to point to, so counsel was aware of the record and there was nothing to object to. *Alexander*, 359 N.C. at 830, 616 S.E. 2d at 918.

¶ 57 Here, the State presented the sentencing worksheet and orally stated it had found Defendant to have accrued a total of fourteen points, making him "level five for felony sentencing purposes." In response, Defendant asserted his reason for not signing the stipulation was the State implied he would be a record four or five, and Defendant thought he would be a level four. Defendant contested he was a level five because of the misdemeanor convictions. Defendant then addressed the points given for the convictions of injury to real property and possession of drug paraphernalia,

and not the felon possessing a firearm charge. Defendant reviewed and understood the prior record worksheet sufficiently to engage with the court on some former charges, while not addressing others.

After the State presented its evidence, the trial judge asked Defendant if there was "any evidence of other showing [Defendant] wish[ed] to make for purposes of sentencing." After conferring with standby counsel, the trial judge offered Defendant an opportunity to say, "anything at all . . . regarding sentencing." Defendant did not question nor address the State's calculation of points.

While Defendant may not have "stipulated" to the worksheet itself in writing, Defendant failed to object to the classification of the felony firearm possession as a Class G felony each time he was presented an opportunity. Defendant's argument is more in line with the defendant in *Alexander*. Defendant reviewed and understood the prior record worksheet, and he objected to portions of it. *See Alexander*, 359 N.C. at 830, 616 S.E. 2d at 918. By his silence, Defendant cannot now contest the remaining convictions to calculate his prior record level. Defendant's argument is overruled.

### 3. Prejudice or Substantially Similar

Defendant argues the State did not prove substantial similarity between the federal and state offenses of a felon in possession of a firearm and the firearm charge was improperly classified as a Class G felony. Defendant argues because the

timeframe the crimes against A.B. and M.F. occurred is after 1 December 2014, when N.C. Gen. Stat. § 90-113.22A went into effect, the State is required to prove the Defendant's possession of drug paraphernalia conviction was related to a controlled substance other than marijuana.

¶ 61 Whether the State has to prove a paraphernalia conviction does not involve marijuana paraphernalia is controlled by *State v. Green*, 266 N.C. App. 382, 831 S.E.2d 611, (2019). In *Green*, the defendant contended the trial court erred in classifying a 1994 paraphernalia conviction as a Class 1 misdemeanor because the State did not prove the paraphernalia conviction was unrelated to marijuana. *Id.* at 388, 831 S.E. 2d at 616. The governing statute for the crime of paraphernalia only had one classification at the time the defendant's conviction but was "subsequently divided . . . into two different classifications depending on the type of drug paraphernalia possessed." *Id.*

¶ 62 Here, similar to the analysis for the Class G federal firearm conviction, Defendant was made aware of the State's intention to use the 1994 paraphernalia conviction in calculating his prior record level, as it was listed on the same sentencing sheet as the Class G federal firearm conviction. Defendant acknowledged "possession of drug paraphernalia . . . [is] a misdemeanor."

¶ 63 The trial court responded the paraphernalia conviction "is noted as a misdemeanor on the worksheet," to which Defendant responded, "Yes, Your Honor."

Defendant indicated from his understanding of the charge he "contest[s] that [he is] a level five." The trial court provided Defendant an opportunity to confer with standby counsel, stated Defendant will "have the opportunity to offer evidence" for his contention that he was not a prior record level five. Defendant chose not to do so.

¶ 64 As noted above, a defendant may concede to a conviction through silence in some circumstances. *See Alexander*, 359 N.C. at 828-29, 616 S.E.2d at 917-18. "Defendant—as the person most familiar with the facts surrounding his offense— stipulated that his [prior] conviction was classified as a Class 1 misdemeanor. Thus, Defendant was stipulating that the facts underlying his conviction justify that classification." *Green*, 266 N.C. App at 388, 831 S.E.2d at 616 (citations and internal quotation marks omitted).

¶ 65 By not objecting to the inclusion of the paraphernalia conviction when given an opportunity, and by not presenting any evidence to support his contention, Defendant left the trial court without a means to determine the validity of his contention. The trial court's classification of Defendant's 1994 possession of drug paraphernalia conviction as a Class 1 misdemeanor and inclusion on the worksheet was proper for purposes of determining Defendant's prior record level. Defendant has failed to show any error in the trial court's determination of his prior record level. His argument is overruled.

## V. Conclusion

¶ 66        Defendant was competent to waive counsel, to stand trial, and proceed *pro se*. The indictments sufficiently asserted each element of the charged crimes. Human trafficking is statutorily defined as a separate offense for each instance and the statute expressly provides the offenses do not merge.

¶ 67        The trial court did not err in sentencing. Defendant received a fair trial, free from prejudicial error he preserved or asserted. We find no error in the jury's verdicts or in the judgments entered thereon. *It is so ordered*.

NO ERROR.

Judge DIETZ concurs.

Judge ARROWOOD concurs in part and dissents in part by separate opinion.

ARROWOOD, Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's opinion that the trial court properly convicted defendant of multiple counts per victim of human trafficking. In what is an issue of first impression for our Courts, the majority has ruled that a violation of North Carolina's human trafficking statute does not constitute a continuing offense. However, our precedent—specifically, past issues of first impression addressing statutory construction—clearly instructs that, where a criminal statute does not define a unit of prosecution, a violation thereof should be treated as a continuing offense.

Here, I do not dispute that defendant is guilty of human trafficking violations, nor do I dispute that the facts on the Record paint a chilling and horrifying picture for each of the alleged victims. However, as I will discuss in more detail as follows, the State has failed to show defendant should be convicted on multiple counts of human trafficking per victim, as opposed to a single, continuing count per victim.

Additionally, in this specific case, convicting defendant of one count of human trafficking per victim[1] would have the effect of reducing defendant's prison sentence from a term of 240-to-312 years to a term of 160-to-208 years—in other words, it would leave undisturbed the fact that defendant will spend the rest of his natural life in prison.

---

[1] Specifically, the four victims the jury found defendant had trafficked: A.C., H.M., A.B., and M.F.

¶ 71        Thus, I would remand this case with instruction to vacate all but one count of trafficking per victim.  I concur in the result with the majority's opinion with regard to the remaining issues on appeal.

¶ 72        Defendant was indicted on 17 counts of human trafficking involving six victims in violation of N.C. Gen. Stat. § 14-43.11, which in pertinent part provides:

> (a) A person commits the offense of human trafficking when that person . . . knowingly or in reckless disregard of the consequences of the action recruits, entices, harbors, transports, provides, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude . . . .
>
> (b) A person who violates this section is guilty of a Class C felony if the victim of the offense is an adult. . . .
>
> (c) Each violation of this section constitutes a separate offense and shall not merge with any other offense.

N.C. Gen. Stat. § 14-43.11 (2019)

¶ 73        Each indictment under which defendant was convicted was a short form indictment alleging that from Date A to Date B (these dates usually being over a several-month period and with same dates on each of multiple indictments for each victim) defendant "did recruit, entice, harbor, transport, provide or obtain by any means another person, [the victim,] with intent that the other person, [the same victim], be held in sexual servitude."

¶ 74        During the charge conference at trial, the trial court initiated a discussion of

whether the violation of human trafficking law constituted a continuing offense:

> It appears to the Court by my count that [defendant] is charged with a total of 17 counts of human trafficking, basically one in each of the case file numbers 16 CRS 2685 through 16 CRS 2701.
>
> . . . .
>
> I mean, the same dates of offense are alleged with each particular woman. Help me understand why human trafficking is not simply a continuing offense. To be more specific, why there should not simply be one human trafficking charge with regard to each of the alleged victims, each woman?

¶ 75       To this, the State replied, reading from subsection (c) of N.C. Gen. Stat. § 14-43.11:

> So, every violation of this section constitutes a separate offense and shall not merge with any other offense. . . . So, every single act the [d]efendant committed is a separate offense. So, when I sat down through the process of deciding what to indict, every time the [d]efendant drove one of the victims or his co-[d]efendant drove one of the victims to a different location, posted them on Backpage, did one of these other things, that was yet another offense of human trafficking.

¶ 76       The trial court continued: "How am I to distinguish and how is the jury to distinguish each of these alleged acts involving [J.O.], or [A.C.], or so forth?" The State then explained how it had created "a list" in which it illustrated how certain events corresponded to specific acts. The State also claimed it had, though it was not required to do so, "limited tremendously unnecessarily" the number of charges

against defendant, further claiming it "could have indicted 250 counts . . . under the [human trafficking] statute." The State explained it had "alleged the things in the statute or in the indictment as appropriate" and "laid it out so [the State] ha[d] a guide" that it "intended to go through with the jury. This defendant with the victim did these three things he's charged with."

¶ 77        The trial court requested to see the State's list. After the trial court obtained the State's list, and following discussions between the State and the trial court about the prosecutor's shorthand notes on the State's list, the trial court stated:

> But it still seems to me this jury is going to be extremely confused if the Court does not help the jury distinguish between these various counts of human trafficking in some fashion. And I cannot do it by the dates here since the same dates are alleged -- same range of dates for each count.
>
> . . . .
>
> [I]t's also the Court's job to make sure that the jury understands the instructions and understands the charges the jury has to consider. So, I go back to my original question.
>
> . . . .
>
> How do I distinguish so that the jury understands, among these various charges of human trafficking with regard to these victims. That each of the alleged victims have more than one human trafficking charge involved?

¶ 78        The State replied:

> I legally don't think you have to. I legally think -- and if -- I may be completely overestimating my ability to impart to

the jury what I intend to impart to the jury is let's say a victim has three counts of human trafficking. If you believe this [d]efendant did one of these three things -- any of the ways that human trafficking could be done based on the evidence you heard, you can find him guilty of those three counts of human trafficking.

¶ 79    After a brief recess, the trial court, stated:

Accordingly, the State will submit each of the trafficking offenses -- human trafficking offenses charged as to each female. So, that means, of course, Madam Clerk that there will be . . . three trafficking offenses with regard to [J.O.], five with regard to [A.C.], two with regard to [H.M.], two with regard to [E.C.], three with regard to [A.B.], two with regard to [M.F.].

¶ 80    During the State's closing argument, one of the prosecutors stated as follows:

Human trafficking. . . .  You are going to hear words like recruit, entice, harbor, transport, obtain by any means. All of those things, that one act, is a separate act of human trafficking. Let's take one of the -- any of the victims.

You have a recruitment conversation, come work for me, join the team. I can give you good heroin. I can give you a place to stay. That is an act of human trafficking, to recruit another person for this purpose. That's one thing that you can do. To transport is another thing that you can do. This is why we talk about specific acts that were done by [defendant] with the victims and what they did to do his operation.

Every time he put a girl in a car and drove them to Raleigh that would be transportation. That was an act of human trafficking, because it was for the purpose of sex for money and coercion was used. We will talk about those in a second. But every single time he put one of these girls in the car to do this business, that was an act of human trafficking.

. . . .

> Every single act is a separate act of human trafficking. Do they recruit or do any of these things to work as a prostitute and there is coercion? Now, coercion can come in two forms in this case. Coercion -- as you understand it, threats of force, know [sic] violent acts, slapping somebody around, you're going to go in this room and do this thing. To be certain those are acts of coercion. But another way coercion can be proven in the State of North Carolina is by the delivery of a controlled substance, period.
>
> So, what human trafficking boils down to are these three things, that he committed one of these acts: recruiting, enticing, harboring, transporting, providing, obtaining person for the purposes of prostitution, and delivery of controlled substances. I think about the evidence and as you heard from each of the victims and put those two things together, every time one of these acts is committed that's another human trafficking count.

¶ 81      Then, the State went on to discuss the victims. As the Record shows, as follows, the State does not individualize each human trafficking charge, as it had told the trial court it would do. In fact, the State does not elucidate or distinguish between the charges per victim at all.

¶ 82      First, the State discussed the charges involving J.O. as an example of what the jurors should expect to find on the verdict sheets; the State did not address the charges of human trafficking or the events involving J.O. specifically.

¶ 83      Then the State discussed the trafficking charges involving A.C.:

> [T]hey're going to have five different pieces of paper with [A.C.] as the victim.

. . . .

So, when you start your conversation and this kind of gets into the obnoxious part, you're going to go, we heard so much. We heard so much. He did so many things with [A.C.]. You're right. He did. So, what do you do with that? Now, as an example with [A.C.], you can traffic by transportation for example, right? And there are going to be five counts of human trafficking. If you believe that he transported her or [co-defendant] did so and they were working together, five times, and the other elements are met, you're done. Check the block and those are five counts of human trafficking.

. . . .

And here's the interesting thing. If five of you think that he transported her five times and seven of you think that he enticed her five times, you don't have to agree, as long as each of you agree that he did each of the things -- he did one of the things. You don't have to -- we don't have to prove that he transported and enticed and did all these things. We just have to prove one of those things, that first count. So, it's incredibly simple if it kind of boils down to that and you don't have to agree as to which one, on each offense. You just don't.

So, when you start your discussions, you're going to have those conversations. Well, how many times do you think he enticed her, or he harbored her or he transported her, I mean, you're already done. You've done all three of those things. That's three right there. Did he transport her more than twice? Sure. Did he harbor her? Every day. Every day she was prostituting and he was harboring her, giving her a place to stay that he was paying for, that's human trafficking.

¶ 84    Regarding the charges involving H.M., the State stated:

[Y]ou're not going to have a hard time finding that he

transported her twice to different cities and that he harbored her or that he recruited her. Just a conversation he had before she started working for him is trafficking. He had that initial recruitment conversation, hey get on the team, come work for me. Maybe he had another one later. And so he recruited and he transported, and he enticed her to make money as a prostitute and for buying her drugs to do so.

¶ 85     Next, the State discussed E.C. and A.B.:

[E.C.], you didn't see, but you heard about. There are going to be two different counts with her. . . . [E.C.], she wasn't there for long. That's why you will only have two counts. [A.B.] testified you are going to have these different counts as well. Again, it starts with a case number. You're going to have those three human trafficking, promotion of prostitution, and conspiracy is the first count. And then you're going to have -- on the other. The same thing. She told you the story. She told you how everything worked.

¶ 86     This was the extent of the State's addressing the various counts of human

trafficking to the jury.

¶ 87     At the close of all evidence, the trial court instructed the jury on the human

trafficking charges as follows:

[D]efendant has been charged with 17 counts of human trafficking involving sexual servitude. Three counts of this offense pertain to [J.O.], five counts to [A.C.], two counts to [H.M.], two counts to [E.C.], three counts to [A.B.], and two counts to [M.F.]. The counts are distinguished on the verdict sheets by the names of the alleged victims of human trafficking and by the dates of the alleged offenses. You will find these names and dates on the upper right-hand corner of the verdict sheets beneath the file numbers. You are to return a separate verdict as to each count. For you

to find the defendant guilty of any count of human trafficking, you must be convinced beyond a reasonable doubt of the defendant's guilt of that count.

The verdict sheets provided to the jury merely distinguished between victims, as the individual charges presented the same date range in the "upper right-hand corner" per victim, not per count.[2]

¶ 88 The jury ultimately returned a verdict of guilty on a total of 12 counts: five counts of human trafficking A.C. from 1 December 2012 through 31 January 2013; two counts for H.M. from 1 January 2014 through 30 March 2014; three for A.B., one from 1 January 2014 through 30 August 2015, unlike in the indictments involving her, and the other two from 1 January 2014 through 30 April 2015, matching the indictments; and two for M.F. from 1 March 2014 through 30 April 2015.

¶ 89 Defendant now argues on appeal that the trial court erred in entering judgment for multiple counts of human trafficking for each victim and contends instead that his human trafficking violations constitute a single, continuing offense per victim.

¶ 90 "Where the language of a statute is clear and unambiguous, there is no room for judicial construction[,] and the courts must give [the statute] its plain and definite

---

[2] With the exception of the three charges involving A.B., in which one, as I discuss in the following paragraph, does not match the date range provided in the corresponding indictments.

meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *In re Redmond*, 369 N.C. 490, 495, 797 S.E.2d 275, 279 (2017) (citation and quotation marks omitted) (alterations in original). "When, however, a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Purcell v. Friday Staffing*, 235 N.C. App. 342, 347, 761 S.E.2d 694, 698 (2014) (citation and quotation marks omitted).

¶ 91 "A continuing offense . . . is a breach of the criminal law not terminated by a single act or fact, but which subsists for a definite period and is intended to cover or apply to successive similar obligations or occurrences." *State v. Maloney*, 253 N.C. App. 563, 571, 801 S.E.2d 656, 661 (2017) (quotation marks omitted) (alteration in original) (quoting *State v. Johnson*, 212 N.C. 566, 570, 194 S.E. 319, 322 (1937)). "For example," as I shall discuss in more detail later, "kidnapping is a continuing offense that lasts from the time of initial confinement until the victim regains free will[.]" *Id.*, 801 S.E.2d at 662 (citation omitted).

¶ 92 Although, as discussed above, this is an issue of first impression for our Courts, our Courts have otherwise dealt with statutory construction under similar circumstances. In *State v. Smith*, for example, our Supreme Court addressed the issue of the allowed unit of prosecution for violations of N.C. Gen. Stat. § 14-190.1; this, at the time, was an issue of first impression. *State v. Smith*, 323 N.C. 439, 440-41, 373 S.E.2d 435, 436-37 (1988).

¶ 93        At that time, N.C. Gen. Stat. § 14-190.1, which criminalizes distribution of

obscene literature, provided:

> It shall be unlawful for any person, firm or corporation to
> intentionally disseminate obscenity.  A person, firm or
> corporation disseminates obscenity within the meaning of
> this article if he or it:
>
> (1) sells, delivers or provides or offers or agrees to sell,
>     deliver or provide, any obscene writing, picture, record
>     or other representation or embodiment of the obscene;
>     or
>
> . . . .
>
> (3) publishes, exhibits or otherwise makes available
>     anything obscene; or
>
> (4) exhibits, presents, rents, sells, delivers, or provides, or
>     offers or agrees to exhibit, present, rent or to provide:
>     any obscene still or motion picture, film, film strip or
>     projection slide, or sound recording, sound tape, or
>     sound track, or any matter or material of whatever form
>     which is a representation, embodiment, performance, or
>     publication of the obscene.

*Id.* at 440-41, 373 S.E.2d at 436 (quoting N.C. Gen. Stat. § 14-190.1 (1986 & Cum.

Supp. 1987)).

¶ 94        Reading the statute on its face, the Supreme Court noted: "The statute makes

no differentiation of offenses based upon the quantity of the obscene items

disseminated." *Id.* at 441, 373 S.E.2d at 436 (citation omitted).  Thus, the issue before

the Supreme Court was whether the Court of Appeals erred by affirming the trial

court's conviction of defendant for three "separate offenses arising out of the

dissemination of" two magazines and one film in the same transaction. *Id.* at 440, 373 S.E.2d at 436.

¶ 95       In its analysis, our Supreme Court cited *Bell v. United States*, stating: "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses when we have no more to go on than the present case furnishes." *Id.* at 442, 373 S.E.2d at 437 (quoting *Bell v. United States*, 349 U.S. 81, 84, 99 L. Ed. 905, 910-11 (1955)).

¶ 96       Applying *Bell*, our Supreme Court concluded: "until the General Assembly unambiguously declares a contrary intent, we should assume that a single sale in contravention of [N.C. Gen. Stat.] § 14-190.1 does not spawn multiple indictments." *Id.* at 444, 373 S.E.2d at 438 (citation and quotation marks omitted). It further stated: "This construction of the statute is in accord with the general rule in North Carolina that statutes creating criminal offenses must be strictly construed *against the State.*" *Id.* (emphasis added) (citing *State v. Hageman,* 307 N.C. 1, 9, 296 S.E.2d 433, 438 (1982); *State v. Ross,* 272 N.C. 67, 157 S.E.2d 712 (1967)).

¶ 97       Accordingly, the Supreme Court concluded, because the defendant had sold three items containing obscene literature in a single transaction, he could only be found guilty of one count in violation of N.C. Gen. Stat. § 14-190.1. *Id.* It thus remanded the case to the Court of Appeals to further remand to the trial court. *Id.*

¶ 98     Addressing another issue of first impression, our Supreme Court recently applied *Smith* in *State v. Conley*, 374 N.C. 209, 839 S.E.2d 805 (2020). There, the Supreme Court addressed the proper unit of prosecution under N.C. Gen. Stat. § 14-269.2(b), which prohibits the possession of firearms on school property. *Conley*, 374 at 212, 839 S.E.2d at 807. The defendant in question had been "convicted and sentenced on five separate counts for violation of the statute based on an incident in which he was discovered on the grounds of a school in possession of five guns." *Id.* at 209, 839 S.E.2d at 806.

¶ 99     N.C. Gen. Stat. § 14-269.2(b) provides: "It shall be a Class I felony for any person knowingly to possess or carry, whether openly or concealed, any gun, rifle, pistol, or other firearm of any kind on educational property or to a curricular or extracurricular activity sponsored by a school." N.C. Gen. Stat. § 14-269.2(b) (2019).

¶ 100     Citing its prior opinion in *Smith*, our Supreme Court reasoned:

> Although the facts in *Smith* are distinguishable from those of the present case and the convictions there arose under a different statute than the one presently before us, we are nevertheless compelled to apply the same legal principles that we applied in *Smith* in interpreting N.C.[Gen. Stat.] § 14-269.2(b). Because it is clear that N.C. [Gen. Stat.] § 14-269.2(b) shares a parallel structure with the statute at issue in *Smith*, our rationale for applying the rule of lenity in that case applies equally here.

*Conley*, 374 N.C. at 214, 839 S.E.2d at 808.

¶ 101        So, "[d]ue to the statute's failure to clearly express the General Assembly's intent as to the allowable unit of prosecution, [the Supreme Court] determined that this ambiguity should be resolved in favor of lenity toward the defendant." *Id.* at 213, 839 S.E.2d at 808 (citation omitted). Accordingly, the Supreme Court, bound by *Smith*, concluded that the defendant could be convicted of "only a single violation of this statute[,]" as opposed to five. *Id.* at 217, 839 S.E.2d at 810.

¶ 102        Our Court has also applied *Smith*. In *State v. Howell*, presenting yet another issue of first impression for our Courts, we addressed the unit of prosecution for violations of child pornography statutes. *State v. Howell*, 169 N.C. App. 58, 609 S.E.2d 417 (2005). There, "a jury [had] convicted [the] defendant of 43 counts of third-degree sexual exploitation of a minor." *Id.* at 59, 609 S.E.2d at 418. On appeal, the "defendant contend[ed] that the charges against him were multiplicitous. [The] [d]efendant assert[ed] that the possession of photos on a single hard drive constitute[d] only one offense or, in the alternative, no more than five separate counts, one for each downloaded zip file." *Id.* at 61, 609 S.E.2d at 419.

¶ 103        At the time, the applicable statute provided: "A person commits the offense of third degree sexual exploitation of a minor if, knowing the character or content of the material, he possesses material that contains a visual representation of a minor engaging in sexual activity." *Id.* (quoting N.C. Gen. Stat. § 14-190.17A(a) (2000)). We observed:

> N.C. [Gen. Stat.] § 14-190.13 (2000) defines "material" as: "Pictures, drawings, video recordings, films or other visual depictions or representations but not material consisting entirely of written words." [The] [d]efendant suggest[ed] that because the definition of "material" specifies items in the plural, the photographs found on his computer constitute only a single charge.

*Id.* (citation omitted).

¶ 104    In our reasoning, we distinguished *Smith* by the use of the words "a" versus "any" in legislation:

> In *Smith*, the [Supreme] Court held that a single sale of multiple pornographic magazines could not yield multiple convictions. However, *Smith* is also easily distinguished from this case, as it involved the defendant's conviction under N.C. [Gen. Stat.] § 14-190.1(a), for intentionally disseminating obscenity. The statute involved here, N.C. [Gen. Stat.] § 14-190.17A(a), differs from the one in *Smith* in two important ways. First, although enacted at the same time and under the same bill as N.C. [Gen. Stat.] § 14-190.17A(a), the statute in *Smith* makes it illegal to sell "*any* obscene writing, picture or other representation or embodiment of the obscene." The [Supreme] Court reasoned that this language, using "any" rather than "a," failed to indicate a "clear expression of legislative intent to punish separately and cumulatively for *each and every* obscene item." By contrast, in N.C. [Gen. Stat.] § 14-190.17A(a), the legislature chose to use the term "a" visual depiction, thus indicating a different intent.

*Id.* at 63, 609 S.E.2d at 420 (citations omitted) (emphases in original).

¶ 105          Accordingly, "defendant's multiple convictions [we]re consistent with the language and intent of the child pornography statutes and d[id] not violate his right to be free from double jeopardy." *Id.* at 64, 609 S.E.2d at 421.

¶ 106          Our Courts have also addressed similar issues of statutory construction with respect to cases involving kidnapping. For example, in *State v. White*, the defendant at issue "was charged with armed robbery, two counts of first degree rape, three counts of first degree sexual offense and three counts of first degree kidnapping." *State v. White*, 127 N.C. App. 565, 569, 492 S.E.2d 48, 50 (1997). With respect to the kidnapping charges,

> [t]he first count of kidnapping charged defendant with confining the victim in his vehicle at [an] intersection . . . for the purpose of facilitating the commission of robbery and not releasing her in a safe place. The second count of kidnapping charged defendant with removing the victim from the intersection to a park for the purpose of facilitating the commission of rape or sexual offenses and sexually assaulting the victim and not releasing her in a safe place. The third count of kidnapping charged defendant with removing the victim from the park to [another man]'s residence for the purpose of facilitating the commission of rape or sexual offenses and sexually assaulting the victim and not releasing her in a safe place.

*Id.* "On appeal, defendant first contends the trial court erred by denying his motion to submit only a single count of kidnapping to the jury. Defendant argues that the kidnapping was a single, continuing offense." *Id.*

¶ 107          At the time, the applicable kidnapping statute provided:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . . .
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.
>
> . . . .
>
> (b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

*Id.* at 570, 492 S.E.2d at 51 (alterations in original) (quoting N.C. Gen. Stat. § 14-39 (1993)).

¶ 108        This Court noted that "N.C. Gen. Stat. § 14-39 contains no express language delineating each act of confinement, restraint or removal during a kidnapping as a separate unit of prosecution." *Id.* Then, applying *Smith*, we stated: "Our Supreme Court has held that, if the General Assembly fails to establish with clarity the precise

unit of prosecution for a particular crime, the statute defining such crime must be strictly construed against the State." *Id.* (citing *Smith,* 323 N.C. at 444, 373 S.E.2d at 438).

¶ 109    We then reasoned:

> If we interpret N.C. Gen. Stat. § 14-39 to mean that each place of confinement or each act of asportation occurring during a kidnapping constitutes a separate unit of prosecution, the State would then be authorized to divide a single act of confinement into as many counts of kidnapping as the prosecutor could devise. . . . Surely this is not what the General Assembly intended. Common sense dictates that *the offense of kidnapping should encompass the entire period of a victim's confinement from the time of the initial act of restraint or confinement until the victim's free will is regained*.

*Id.* at 570-71, 492 S.E.2d at 51 (emphasis added).

¶ 110    "We therefore h[e]ld that the offense of kidnapping under N.C. Gen. Stat. § 14-39 is a single continuing offense, lasting from the time of the initial unlawful confinement, restraint or removal until the victim regains his or her free will." *Id.* at 571, 492 S.E.2d at 51. Thus, we concluded the defendant had committed one act of kidnapping, beginning when the victim was removed from her vehicle until she was released in a motel parking lot. *Id.*, 492 S.E.2d at 52.

¶ 111    Again, current North Carolina human trafficking laws, as they pertain to adult victims, state:

> (a) A person commits the offense of human trafficking

> when that person . . . knowingly or in reckless disregard of the consequences of the action recruits, entices, harbors, transports, provides, or obtains by any means another person with the intent that the other person be held in involuntary servitude or sexual servitude . . . .
>
> (b) A person who violates this section is guilty of a Class C felony if the victim of the offense is an adult. . . .
>
> (c) Each violation of this section constitutes a separate offense and shall not merge with any other offense.

N.C. Gen. Stat. § 14-43.11.

¶ 112        Per *Howell* and *Conley*, our human trafficking statute is clear in its use of the word "another" in subsection (a) as it pertains to the victim: the law intends to protect individual victims from human trafficking, and, read in conjunction with subsection (c), anyone in violation thereof will, at a minimum, face charges for each victim affected. Additionally, much like the laws at issue in *Howell* and *Conley*, our human trafficking statute is also silent on its intended unit of prosecution. Although the majority insists subsection (c) of this statute is clear and controlling here, it does not illustrate how or when a violation constitutes "a separate offense" and does not provide the conditions under which one violation ends and another begins.

¶ 113        Furthermore, here, the Record throughout does not shed light as to why defendant was, or should be, convicted of 12 counts of human trafficking.

¶ 114        First, defendant was indicted on: three counts of human trafficking involving J.O., all occurring "between and including March 12, 2015 to March 16, 2015"; five

counts involving A.C. "between and including December 1, 2012 through January 31, 2013"; two counts involving H.M. "between and including January 1[,] 2014 to March 30, 2014"; two counts involving E.C. "between and including July 1, 2013 through August 5, 2013"; three counts involving A.B. "between and including January 1, 2014 to April 30, 2015"; and two counts involving M.F. "between and including March 1, 2014 to April 30, 2015[.]" This was the extent of the detail provided in the indictments for each count.

¶ 115     In fact, the indictments do not give any indication as to which of the multiple actions prohibited under N.C. Gen. Stat. § 14-43.11—recruiting, enticing, harboring, transporting, providing, or obtaining—are covered by each indictment or when any specific act of trafficking commenced or concluded, as we are provided the same date range for multiple counts for each victim. In addition, although the victims' testimonies may well have supported separate and distinct crimes of trafficking, the indictments are not drawn in such a way as to differentiate the separate and distinct crimes that could have been charged.[3]

---

[3] In other words, these indictments do not specify what defendant did under N.C. Gen. Stat. § 14-43.11 to spur each indictment. This is especially interesting when compared and contrasted with, for example, the manner in which the State generally prosecutes drug trafficking violations. *See, e.g.*, N.C. Gen. Stat. § 90-95 (2019) (making it unlawful to "manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance; . . . create, sell or deliver, or possess with intent to sell or deliver, a counterfeit controlled substance;. . . [or] possess a controlled substance"); *State v. Williams*,

¶ 116     Nonetheless, defendant was found guilty of: five counts of human trafficking involving A.C. from 1 December 2012 through 31 January 2013; two counts involving H.M. from 1 January 2014 through 30 March 2014; three involving A.B., one from 1 January 2014 through 30 August 2015 and the other two from 1 January 2014 through 30 April 2015; and two involving M.F. from 1 March 2014 through 30 April 2015. Again, nowhere within the Record or the State's arguments at trial is it shown that defendant committed each and every one of these violations in each and every timeframe as listed in the jury verdicts.

¶ 117     In summary, neither the indictments, the State's closing argument at trial, the jury instructions, nor the jury verdict sheets distinguish between the individual counts of human trafficking upon which defendant was ultimately convicted.

---

2021-NCCOA-263, ¶¶ 3-4 (unpublished) (in which the defendant was indicted under N.C. Gen. Stat. § 90-95 on counts of, among others, trafficking opium or heroin by possession; trafficking opium or heroin by transportation; trafficking opium or heroin by manufacture; and possession with intent to manufacture, sell, or deliver heroin); *State v. Surratt*, 2021-NCCOA-407, ¶ 3 (in which the defendant was indicted on, among others, "one charge of possession with intent to manufacture, sell, and deliver a controlled substance, namely cocaine . . . ; [and] one charge of sale and delivery of a controlled substance, namely cocaine[.]"); *State v. McMillan*, 272 N.C. App. 378, 381, 846 S.E.2d 575, 578 (2020) ("Defendant was . . . indicted o[n] Trafficking in Cocaine by Possession, [and] PWISD Cocaine[.]"); *State v. Coleman*, 271 N.C. App. 91, 93, 842 S.E.2d 631, 633 (2020) ("Defendant was indicted for possession with intent to manufacture, sell, deliver hydrocodone; selling and delivering hydrocodone[;] possession with intent to manufacture, sell, deliver alprazolam; and selling and delivering alprazolam for the 1 February 2016 transactions. Defendant was indicted for two counts of trafficking opium for the transactions on 4 February and 5 February 2016.").

¶ 118        Furthermore, despite the fact that the State insists it distinguished the various charges in its own notes, and despite its reasoning that "every single time [defendant] put one of these girls in the car to do this business, that was an act of human trafficking[,]" there is nothing before us, and thus nothing before the jury at trial, to show this. In fact, even though, during its closing statement, the State correctly informed the jury that any act listed in N.C. Gen. Stat. § 14-43.11—recruit, entice, harbor, transport, provide, or obtain—constitutes a commission of human trafficking, the State did not show the 12 exact and specific instances—five, two, three, and two per victim, respectively—in which defendant enticed, harbored, transported, provided, or obtained the victims.

¶ 119        On the contrary, as reflected by the swaths of time listed in the indictments and jury verdicts, and as confirmed by the victims' testimonies, the Record tends to show that defendant trafficked each victim over an extended period of time per victim. With nothing before us tending to prove defendant should be found guilty of 12 counts of human trafficking, the number 12 here is nothing other than arbitrary.

¶ 120        Though the majority insists its holding is necessary to avoid convicting future perpetrators who commit multiple violations of a single continuing offense, the majority's opinion provides the State an unfettered license to prosecute a defendant on as many counts as it wishes without actually distinguishing the counts—a result that starkly contrasts with "the general rule in North Carolina that statutes creating

criminal offenses must be strictly construed *against the State*." *Smith*, 323 N.C. at 444, 373 S.E.2d at 438 (emphasis added).

¶ 121      "If we interpret N.C. Gen. Stat. § 14-[43.11] to mean that each" act "occurring during a [human trafficking] constitutes a separate unit of prosecution, the State would then be authorized to divide a single act of confinement into as many counts of [human trafficking] as the prosecutor could devise." *See White*, 127 N.C. App. at 570, 492 S.E.2d at 51. Rather, "[c]ommon sense dictates that the offense of [human trafficking] should encompass the entire period of a victim's" being held in involuntary or sexual servitude "from the time of the initial act of" recruiting, enticing, harboring, transporting, providing, or obtaining begins "until the victim's free will is regained." *See id.* at 571, 492 S.E.2d at 51.

¶ 122      As egregious and grotesque as defendant's actions have been, which the majority reiterates and which I do not dispute, the severity thereof does not inform the Court as to why defendant was found guilty of 12 counts of human trafficking or why defendant could not be charged with a single, continuing offense per victim; it certainly does not provide guidance as to the prosecution of future human trafficking violations. In fact, the majority's holding may trigger the exact opposite of its desired effect: by allowing the State not to distinguish between each count, the State could successfully charge a perpetrator with fewer counts of human trafficking than the evidence tends to show.

¶ 123     Defendant was charged for 12 counts of human trafficking without the State asserting what each count was, and the Record before us was not instructive. Though this is an issue of first impression, the pattern established by our Courts' precedent is clear. "Although the facts" in the above-cited cases "are distinguishable from those of the present case and the convictions there arose under . . . different statute[s,]" I am "compelled to apply the same legal principles" therein. *See Conley*, 374 N.C. at 214, 839 S.E.2d at 808. "Because it is clear that N.C. [Gen. Stat.] § 14-[43.11] shares a parallel structure with the[se] statute[s] . . . *our rationale for applying the rule of lenity in th*[*ose*] *case*[*s*] *applies equally here.*" *See id.* (emphasis added).

¶ 124     Because this is a case of first impression, I believe it is appropriate to review how other jurisdictions have treated similar issues. While such cases are not binding, and the manner in which our Supreme Court has interpreted the other criminal statutes detailed above are of much greater weight in this case, I believe other jurisdictions can many times be instructive in how we view similar situations. Our research has not revealed many cases on how to interpret human trafficking statutes; however, the New Mexico Court of Appeals has addressed the issue of determining the unit of prosecution in a substantially similar human trafficking statute.

¶ 125     The New Mexico human trafficking statute in pertinent part provides:

> A. Human trafficking consists of a person knowingly:
>
> (1) recruiting, soliciting, enticing, transporting or

> obtaining by any means another person with the
> intent or knowledge that force, fraud or coercion will
> be used to subject the person to labor, services or
> commercial sexual activity[.]
>
> . . . .
>
> D. Prosecution pursuant to this section shall not prevent
> prosecution pursuant to any other provision of the law
> when the conduct also constitutes a violation of that
> other provision.

N.M. Stat. § 30-52-1 (2019).

¶ 126      In *State v. Carson*, the defendant "was convicted of two counts of human trafficking involving the same victim . . . between January 24, 2013, and February 7, 2013, during their first trip to Albuquerque, and again between February 17, 2013, and February 22, 2013, during their second trip to Albuquerque." 2020-NMCA-015, ¶ 36, 460 P.3d 54, *cert. denied*, 2020-NMCERT-____ (No. S-1-SC-38128, Feb. 6, 2020). After conducting a "six-factor" inquiry, the Court of Appeals of New Mexico concluded the defendant's acts "were not sufficiently distinct to support two separate counts of human trafficking for the same victim . . . ." *Id.* ¶¶ 34, 42. "If there [are] not sufficient indicia of distinctiveness to separate the defendant's acts, we apply the rule of lenity[,] . . . invoking the presumption that the Legislature did not intend to create separately punishable offenses." *Id.* ¶ 42. (citation and quotation marks omitted) (some alterations in original).

¶ 127     Accordingly, having reviewed the Record, North Carolina case law, and having surveyed how other jurisdictions treat the unit of prosecution in similar human trafficking statutes, I would remand this case for the trial court to vacate the multiple charges related to each victim and to leave intact a conviction of one count of human trafficking of A.C., H.M., A.B., and M.F., respectively.